**Kendall SHERMAN and Arthur Sherman, Jr., Plaintiffs-Appellants,**

**v.**

**Fred H. HALLBAUER, Defendant-Appellee.**

**No. 71–2047.**

United States Court of Appeals, Fifth Circuit.

Feb. 16, 1972.

Edward R. Downing, Miami, Fla., for plaintiffs-appellants.

Roland R. Parent, Smathers & Thompson, Miami, Fla., for defendant-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This is not the ordinary reversal of a district court's decision granting summary judgment against plaintiffs whose complaint stated a cause of action upon which the case should have gone to trial. The bizarre feature of the case is that the plaintiffs insisted—until the waning moments of the pre-trial proceedings—upon construing the hazy factual scenario so that it stated, at best, only a tenuous legal claim under Florida law.

Misled by the plaintiffs' original insistence on their shaky legal position and their failure to focus on a last-minute shift to a solid legal position, the district court granted summary judgment for the defendant. Because the record reveals clearly that the plaintiffs finally succeeded in bringing a viable interpretation of the case to the judge's attention, we hold that it was improper for the district court to grant summary judgment in this case.

Kendall Sherman and his brother, Arthur Sherman, Jr., informed Fred Driver & Associates, a yacht and ship brokerage firm, of their interest in acquiring a freight vessel. Fred Driver told the Shermans that the *Kermac Workboat #1* was available for purchase, and the Shermans contracted in writing with the Searoad Shipping Company to buy the *Kermac Workboat #1*. The purchase was agreed upon subject to a satisfactory survey of the vessel's hull and machinery and subject to the vessel's completing a satisfactory sea trial. Both tests were to be conducted at the Shermans's expense. Driver was to arrange the sea trial, the engine surveys, and the condition survey of the hull.

Driver engaged Fred Hallbauer, the defendant, to perform the condition survey of the *Kermac Workboat #1*. Hallbauer conducted his survey in the presence of one Macauley, who represented the Shermans. Macauley reported to the Shermans, following the sea trial and the surveys that the vessel was in good running condition; he said nothing about the condition of the *Kermac's* hull. At no time did Macauley discuss Hallbauer's survey with the Shermans. There was evidence indicating that the Shermans were willing to accept delivery of the vessel even though Hallbauer's report had not been turned over to them. Hallbauer's report was finally completed and delivered, and the purchase of the vessel closed; it is not clear whether delivery of the report preceded closing of the deal.

Later, the Shermans decided to transfer the *Kermac* to a Bahamian corpora-

tion, Bimini Conveyor, Ltd. The vessel was sold to the corporation and its name changed to the *Bimini Trader*. En route to Miami, two hours out of Bimini, a major hole appeared in the ship's bottom. Repairs amounting to some $50,000 were made for the purpose of obtaining a load line certificate in accordance with recommendations of the American Bureau of Shipping. The Shermans sued Hallbauer to recover the amount of these repairs.

The Shermans's original complaint was a strange amalgam of allegations of misrepresentation and negligence. In the Tenth paragraph of the complaint, the Shermans alleged that "the misrepresentations, stated and unstated, in the report of Survey and Recommendations were the direct and proximate result of the vessel subsequently becoming unseaworthy . . ." The Second Count of the Complaint, however, sounded in direct negligence, and not in negligent misrepresentation. It set forth that "the resulting negligence of the defendants herein was the direct and proximate cause for the damages sustained to the vessel in that the defendants . . . failed and neglected to conduct a proper survey . . . for the purpose of determining the integrity and seaworthi-

ness of the bow section of the vessel. . . . " The Seventeenth Paragraph alleged that the damages to the vessel "directly and proximately resulted from the improper and negligent survey and recommendations, all to [the plaintiffs'] damage in the sum of $50,000."

At a pre-trial conference before the district judge, the lawyers for both parties attempted to narrow the legal issues. Counsel for defendant Hallbauer made much of the Shermans's sale of the *Kermac* to Bimini Conveyor, Ltd., a corporation owned entirely by the Shermans, their father, and their father-in-law, Harcourt Brown.[1] At the end of the conference, the Shermans's lawyer said that he would file a motion to amend the pleadings to include the corporation as a party plaintiff; he did file that motion, and the trial judge granted it. What also emerged from the pre-trial conference, and later in the motion to amend the pleadings to add Bimini Conveyor,[2] was the suggestion of the Shermans's lawyers that Hallbauer had been hired by the seller and that his inaccurate survey (if it was in fact inaccurate) formed the basis for an action in misrepresentation.[3] On the basis of this allegation by the Shermans, Hall-

---

1. The Shermans sold the *Kermac* to Bimini Conveyor, Ltd. for $70,000, some $2500 more than they had paid for the vessel. Hallbauer argued that this sale at a profit proved that the Shermans had not been damaged by Hallbauer's allegedly negligent survey; and insisted further that under no circumstances did Hallbauer owe a duty of care to the Shermans's successors in ownership of the vessel. The Shermans responded to this argument by pointing out that the ownership of the stock of Bimini Conveyor, Ltd. was in the same hands as ownership of the *Kermac* before the transfer to the Bahamian corporation. They argued that Bimini Conveyor was but the "alter ego" of the original purchasers and that the corporate form should not stand in the way of their recovery for damages caused by Hallbauer's survey. This "alter ego" problem was ultimately reflected in a motion by the Shermans to add Bimini Conveyor as an additional party plaintiff, and we interpret the district court's decision to grant the motion adding Bimini

Conveyor as a resolution in the Shermans's favor of the issue of whether they, or the corporation had standing to sue. The issue is not before us on this appeal since there is no indication that the summary judgment granted against the Shermans and the corporation was premised upon the defendant's arguments based on the corporate transfer of the vessel.

2. Paragraph 2 of the Shermans's Motion to Amend the Complaint stated:
 "2. The vessel was to be surveyed by Defendant Hallbauer who was appointed by Driver Associates on behalf of the sellers, which appointment was agreed to by the buyers on the grounds that the Defendant was recommended as a competent marine surveyor."

3. The following excerpt from the pre-trial conference illustrates the confusion of the Shermans's position. (Mr. Downing for the Shermans; Mr. Parent for Hallbauer)
 THE COURT: Well but, of course, Mr. Parent's point, if I understand it, is

bauer filed a motion for summary judgment, urging in his memorandum that Florida law precluded recovery for a negligent survey unless the recipient of the survey was in privity of contract with the surveyor. The Shermans responded to the motion for summary judgment by filing a memorandum which suddenly shifted to a contractual theory of the case, alleging that Hallbauer had been hired and paid by the plaintiffs and that he owed them the duty to perform as he had committed himself to perform. The district court granted summary judgment in favor of the defendant Hallbauer, without explanation, but apparently because the Shermans and Hallbauer were not in privity of contract and because, as argued by the defendant, no action for misrepresentation would lie.[4]

one of privity and under what you have told me about the case, this defendant had no privity with your people, so there is no amendment that could bring in this Bahamian corporation. He had a contract. He was in privity of contract with the Shermans. He was not in privity of contract, according to what you have told me, with anyone else. So his responsibility of it, through the broker, his responsibility was to render a true and honest, competent survey to someone.

Now, the question is who, and under the pleadings, apparently to the Shermans, and now you are saying, "I would like to amend and add a couple of more people, another entity."

MR. DOWNING: The only reason I say that is because Mr. Parent raises this here as a legal point, otherwise, I would not.

THE COURT: You see, if the Shermans had a contract and employed this man to do some work, and if he did it negligently, then they are entitled to recovery. But he did not perform the work—well, negligently or not at all— for the Bahamian corporation.

MR. PARENT: That's the point I am taking, Your Honor. He did not have to do anything.

MR. DOWNING: The Shermans did not have a contract with the defendant surveyor. They had a contract with the broker and the seller of the vessel, not with the surveyor. The surveyor was brought in by the broker.

THE COURT: That may be another defense.

MR. PARENT: If that is the position, then I take the position I did not owe them any duty, if that is the position he is taking.

THE COURT: I am trying to understand.

 * * * * *

Who did Mr. Fred H. Hallbauer promise to do this work for? I mean, who employed him?

MR. DOWNING: He was employed by the broker who represented the owner, the seller.

THE COURT: Well, the broker may have been—and under your theory, was the agent of the owner, then he was acting for the owner; therefore, the privity of the broker would run to or flow to the benefit of the owner, the Shermans.

MR. DOWNING: The Shermans were the buyers. Searoad and Driver were principals and agent in reference to the originals sellers. The surveyor was appointed by the broker for the seller. He made the survey, and then the survey report finally came to the Shermans. It is not a crystal clear situation, Your Honor (emphasis added.)

4. In his motion for summary judgment, Hallbauer stated "[t]hat the reason for the renewal of the Motion for Summary Judgment is the disclosure at the Pre-Trial Conference in this cause held February 1, 1971 that they [sic] desired to amend their complaint by adding additional parties plaintiff, and the further disclosure by the plaintiffs at said Pre-Trial Conference that it was their position that the Defendant, FRED HALLBAUER, at all times material to this lawsuit was acting on behalf of the seller of the vessel which is the subject matter of this lawsuit . . . . . "

The district court granted the plaintiffs' motion to amend their complaint by adding additional parties plaintiff. We believe this action implicitly rejected Hallbauer's suggestion that summary judgment would be appropriate on the basis of that issue, since the amendment of the pleadings would be fruitless if summary judgment later amounted to a holding that the additional plaintiffs had no standing to sue Hallbauer. Lest there be any confusion, we hold alternatively that there

We have serious doubts that the Florida courts would continue to insist upon privity of contract as a prerequisite of recovery by a buyer who has been misled by the representations of a seller's "special knowledge" agent—for example, a surveyor, an accountant, or a title abstractor. It is true that in Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195, the Florida Supreme Court held that liability for a negligent title abstract ran only from abstractor to the vendor who hired him, and not to the buyer of the property who allegedly relied upon the abstract in completing his purchase. *Sickler* explicitly stressed the lack of privity between abstractor and buyer, and it has never been overruled.

At the same time, however, other Florida cases hold that misrepresentation by a seller, Kutner v. Kalish, Fla. Dist.Ct.App.1965, 173 So.2d 763, 764, cert. denied (Fla.) 183 So.2d 210, or his selling agent, Wheeler v. Baars, 1894, 33 Fla. 696, 15 So. 584, is actionable if the representor knew or ought to have known of the falsity of his representation. On three occasions in recent years, this Court has followed the *Wheeler* line of cases, and noted the failure of the Florida courts or legislature to depart from our conclusions. Entron Inc. v. General Cablevision of Palatka, 5 Cir. 1970, 435 F.2d 997; Emerson Electric Co. v. Farmer, 5 Cir. 1970, 427 F.2d 1082, 1087; Bobby Jones Garden Apartments, Inc. v. Suleski, 5 Cir. 1968, 391 F.2d 172, 178.

Read together, *Sickler* and *Wheeler* create an anomalous framework for the Florida law of misrepresentation. Representations of a "special knowledge" agent are immunized from judicial scrutiny, except at the behest of those with whom the special knowledge agent is in privity of contract—in the usual sale or loan transaction, persons hardly likely to be discontent with a too-rosy picture of their own salable asset or security. Apparently, this protection is granted even when special knowledge agents have actual knowledge that their principal's buyer or lender intends to rely upon their representations. An ordinary agent of the seller, however, whose representations may be expected to carry a good deal less weight than those of his more learned counterpart and who does not designate himself professionally as one entitled to belief, is held accountable to his principal's buyer for even negligent misrepresentation.

Because the Shermans finally set forth a legal basis for their action which avoids the Florida law of misrepresentation entirely, we need not resolve this thorny problem as we think the courts of Florida would resolve it. We do note, though, that the Florida courts are feeling the pressure of the *Sickler* rule, and seem to be moving away from it. In a recent decision, one Florida District Court of Appeals has indicated that an accountant will be held liable without privity if it can be shown by one foreseeably relying on its representations that "gross negligence" was involved in their preparation. Canaveral Capital Corp. v. Bruce, 1968, Fla.App., 214 So. 2d 505. We think this standard represents an effort to stake out a middle position between the harsh *Stickler* rule and full extension of the *Wheeler* rule to the representations of special knowledge agents. In any event, it is clear that the Florida law of misrepresentation is in an unpredictable state of flux at this time, and for that reason we would be hard pressed to hold that the district court was in error when it granted summary judgment against the Shermans on their misrepresentation theory of the case. We do not affirm that decision; nor do we reverse it. We merely note this legal reef in Florida's waters and heave a sigh of relief that we were not the first to come squarely upon it.

Florida's law of misrepresentation notwithstanding, we hold that it was

was sufficient factual basis alleged to require a trial on the question of the relationship between the Shermans and Bimini Conveyors, Ltd.

improper for the district court to grant summary judgment against the Shermans. In their memorandum in opposition to the motion for summary judgment by Hallbauer, the Shermans modified their earlier position. Previously, they had argued that Hallbauer had been hired by the sellers of the *Kermac* and that the defective survey therefore sounded in misrepresentation by an agent of the seller. But the memorandum plainly turned the Shermans' case in a new direction:

> The plaintiffs, Kendall and Arthur Sherman, by their undersigned attorneys, Reply to Defendant's Memorandum and in support of their Motion to Amend the Complaint, say:
>
> 1. The relationship between and amongst the present two plaintiffs and the additional three plaintiffs is that of business associates or partners who have a common interest in the raising of capital, rendering of services, and the advancement of the business of water transportation after negotiating the purchase of the "Bimini Trader" ex "Kermac." The defendant, Hallbauer, was the surveyor selected by the broker, Driver Associates, *for and on behalf of the plaintiffs*. The defendant's survey fee was paid by the plaintiffs to Driver Associates after the survey report was completed by the defendant. The plaintiffs, together with Arthur Sherman, Sr. and Harcourt Brown, were all business associates and partners in the venture. *The relationship with defendant was contractual and the duty to act in good faith is imposed by law between the defendant and the plaintiffs.*
>
> 2. The defendant was instructed by the broker Driver to conduct a condition survey *for the plaintiff buyers*. The defendant had knowledge that the sale of the "Bimini Trader" was based on the acceptance of his survey and the plaintiffs intended to rely on the statements, recommendations, and survey report of defendant. *The defendant had a duty created by contract in favor of the plaintiffs,* Arthur Sherman, Sr., Harcourt Brown, and their alter ego Bimini Conveyor, Ltd., imposed by law on the presumption that the parties intended to confer a benefit which was based on a reliance on the defendant's survey. Further, such duty creates a remedy and the essential privity between the promisor (defendant) and the other business partners, Arthur Sherman, Sr. and Harcourt Brown, and finally, Bimini Conveyor Ltd., and is necessary to a binding legal ogligation, even though the primary purpose was to benefit themselves as associates and partners . . . *It is basic substantive law that liability exists in favor of those employing defendant which is the case herein.* Further on the grounds of tort liability the plaintiffs will be able to clearly show that defendant was negligent and even grossly negligent in his method of surveying and the report which resulted in declaring the "Bimini Trader" a seaworthy vessel in suitable condition upon compliance with defendant's recommendations . . . (emphasis added).

We have often said that summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Rule 56 (c), Fed.R.Civ.P.; Keating v. Jones Development of Missouri, Inc., 5 Cir. 1968, 398 F.2d 1011, 1013; Harvey v. Great Atlantic & Pacific Tea Company, 5 Cir. 1968, 388 F.2d 123, 124; Marsden v. Patane, 5 Cir. 1967, 380 F.2d 489, 491. We need not embark upon a detailed recapitulation of the facts. For here it was clear to both parties and to the judge that there were ample grounds revealed before trial from which the finder of fact might conclude that Hallbauer was bound by contract to the Shermans, that he

**1242**

had done his job in substandard fashion, and that the Shermans (or the closely related Bahamian corporation) had been damaged by Hallbauer's inadequate survey. The Shermans paid Hallbauer, or so they alleged; they needed his survey to secure financing of the *Kermac* purchase. There was no factual basis for a summary conclusion that Hallbauer was not contractually obligated to the Shermans.

■ We must therefore conclude that the district court excluded the Shermans's memorandum from the catalog of items which it considered in passing upon the motion for summary judgment. The legal theory advanced in that memorandum for interpreting the emerging facts furnished a basis for denial of summary judgment and at least a trial of the action against Hallbauer based on contract. True, the Shermans advanced the contractual theory late in the day. But Rule 15 of the Federal Rules of Civil Procedure permits a party to amend his pleadings out of time by leave of court, and commands that "[such] leave shall be freely given when justice so requires." It is true too that the Shermans's lawyer consumed no small amount of the court's valuable time in insisting upon his misrepresentation theory of the case. Still, we conclude that in the interests of justice the district court should have construed the Shermans's frantically revised theory of the case, as plainly set forth in their memorandum in opposition to summary judgment, as a motion to amend the pleadings filed out of time. The command of Rule 15 is straightforward and permissive. On the facts of this case, fair treatment for the Shermans requires that they not be deprived of their day in court simply because, for a time, their attorney did much to insure that the day would never come. The district court should have allowed the amendment and must do so when the case is remanded for trial.

We reverse and remand for proceedings consistent with this opinion.