# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

J. CLARICE KNIGHT and
CAROLYN K. BRANTLY,
Administratrices ad litem for the
Estate of Alta M. Knight, deceased,
and SHERRY GARLAND,

      Plaintiffs/Appellants,

VS.

HOSPITAL CORPORATION OF
AMERICA a/k/a CENTENNIAL
MEDICAL CENTER; HOSPITAL
CORPORATION OF AMERICA;
HOSPITAL CORPORATION OF
AMERICA a/k/a WESTSIDE
HOSPITAL and JANE/JOHN DOE
NURSES,

      Defendants/Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

**January 8, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

Davidson Circuit
No. 94C-91

Appeal No.
01A01-9509-CV-00408

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

For the Plaintiffs/Appellants:

Shelley I. Stiles
Brentwood, Tennessee

For the Defendants/Appellees:

C.J. Gideon, Jr.
Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

The medical malpractice and outrageous conduct claims involved in this appeal stem from the hospitalization of an elderly patient for total hip replacement surgery. The patient,[1] her two sisters, and her caretaker sued the hospital and its nursing staff in the Circuit Court for Davidson County alleging that their lack of appropriate care caused the patient to enter a vegetative state and caused severe emotional stress to the patient's sisters and caretaker. The trial court granted the hospital's motion for summary judgment. We affirm the trial court.

## I.

Alta M. Knight was a 76-year-old retired budget analyst. On January 7, 1993, she was admitted to Centennial Medical Center in Nashville for major surgery on her fractured left hip. Ms. Knight tolerated the total hip replacement surgery well; however, her course of recovery following surgery was difficult. Her condition eventually stabilized, and she was discharged from the hospital on February 1, 1993.

On January 7, 1994, Ms. Knight, her two sisters, and her caretaker filed suit against Centennial Medical Center and unknown members of its nursing staff. The complaint alleged that the negligent care of the hospital's "employees and/or agents" caused Ms. Knight to sustain anoxic injuries while hospitalized that eventually caused her to fall into a vegetative state. The complaint also alleged that the hospital's neglect of Ms. Knight's physical condition immediately following surgery was outrageous conduct that caused them mental anguish and depression.

Five months after Ms. Knight's complaint, Centennial Medical Center and its nursing staff filed a motion for summary judgment supported by the deposition of Dr. Stephen L. Hines, the internist who provided Ms. Knight's post-operative

---

[1] The patient died after the suit was filed; however, her two sisters continued to pursue her claims as joint personal representatives of her estate.

care while she was hospitalized. Dr. Hines stated that Ms. Knight had received "careful, close and continuous" care during her stay at Centennial Medical Center and that she did not sustain an anoxic injury while hospitalized.

Ms. Knight's estate and her sisters and caretaker responded to the summary judgment motion with three affidavits. In the first, Ms. Knight's caretaker stated that the sight of Ms. Knight seven hours after surgery "tied to a gurney, naked and with dried vomit on her body" caused her to suffer "mental anguish, recurring nightmares and severe depression." In the second affidavit, a recovery room nurse employed at another hospital opined that Ms. Knight "was not a good candidate for elective surgery," that her treating physicians should have conducted a preoperative "independent medical evaluation," and that a "fluid overload" caused congestive heart failure, pulmonary edema, and aspiration which resulted in permanently injuring Ms. Knight. In the third affidavit, an orthopaedic surgeon from Georgia stated that Ms. Knight's anesthesiologist and surgeon had deviated from the standard of care "by failing to stabilize her medical status prior to the hip arthroplasty" and that their actions "resulted in medical complications following her hip surgery."

The trial court granted the hospital's motion for summary judgment in August 1994. The trial court concluded that the recovery room nurse was not qualified to provide an expert opinion concerning the conduct of Ms. Knight's physicians and thus that most of her affidavit was inadmissible. It also concluded that the Georgia orthopaedic surgeon's affidavit addressed the conduct of Ms. Knight's treating physicians who were not parties to the case and, therefore, that the affidavit did not create a genuine factual dispute sufficient to defeat the summary judgment motion.

Ms. Knight's sisters and caretaker filed a "motion for new hearing." They asserted that the trial court had not addressed the caretaker's outrageous conduct claim[2] and that the hospital should be held vicariously liable for the conduct of

_____

[2]The outrageous conduct claim filed by Ms. Knight's sisters had earlier been dismissed for failure to state a claim upon which relief can be granted apparently because the sisters had
(continued...)

Ms. Knight's treating physicians. They also asserted, for the first time, that they needed more time to conduct discovery because Ms. Knight had died and the case had been pending "only a few months" when the summary judgment was filed. The trial court denied the motion on three grounds. First, it concluded that no additional discovery had been attempted after its June 1994 order expressly permitting additional discovery. Second, it determined as a matter of law that the caretaker's affidavit could not support a claim for outrageous conduct. Third, it concluded that the complaint did not allege and the plaintiffs' provided no proof of an agency relationship between the hospital and Ms. Knight's treating physicians.

## II.

The sole issue on appeal is whether the affidavits opposing the hospital's motion for summary judgment established genuine disputes of material facts sufficient to render a summary disposition inappropriate. We find that they do not.

## A.

Summary judgment proceedings should not be used to find facts, to resolve disputed factual issues, or to choose among various factual inferences that may be drawn from undisputed facts. *Byrd v. Hall,* 847 S.W.2d 208, 216 (Tenn. 1993). They cannot replace trials of disputed, material factual issues. *Blocker v. Regional Medical Ctr.,* 722 S.W.2d 660, 663 (Tenn. 1987); *Foley v. St. Thomas Hosp.,* 906 S.W.2d 448, 452 (Tenn. Ct. App. 1995). Accordingly, a court will grant a motion for summary judgment only if the facts and conclusions reasonably drawn from the facts support the conclusion that the moving party is entitled to a judgment as a matter of law. *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995); *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn. 1981). It should refrain from granting a summary judgment if any uncertainty or doubt exists with regard to the facts or conclusions

---

[2](...continued)
not seen Ms. Knight in the same condition observed by her caretaker.

to be drawn from the facts. *Byrd v. Hall,* 847 S.W.2d at 211; *Poore v. Magnavox Co.,* 666 S.W.2d 48, 49 (Tenn. 1984).

Tenn. R. Civ. P. 56 does not require the record to be free from all factual disputes. Only "genuine issue[s] as to any material fact" undermine summary judgments. Tenn. R. Civ. P. 56.03. A factual dispute becomes material only when it affects the legal elements of the claim or defense embodied in the summary judgment motion. *Payne v. Breuer,* 891 S.W.2d 200, 202 (Tenn. 1994); *Walker v. First State Bank,* 849 S.W.2d 337, 340 (Tenn. Ct. App. 1992); *Rollins v. Winn Dixie,* 780 S.W.2d 765, 767 (Tenn. Ct. App. 1989). Accordingly, the Tennessee Supreme Court has held that

> A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. Therefore, when confronted with a disputed fact, the court must examine the elements of the claim or defense at issue in the motion to determine whether the resolution of that fact will effect the disposition of any of those claims or defenses.

*Byrd v. Hall,* 847 S.W.2d at 215; *see also Suddath v. Parks,* 914 S.W.2d 910, 913 (Tenn. Ct. App. 1995); *Brenner v. Textron Aerostructures,* 874 S.W.2d 579, 583 (Tenn. Ct. App. 1993).

Decisions concerning whether a genuine dispute of material fact exists should be made using the same principles applicable to disposing of motions for directed verdict at the close of the plaintiff's proof. *Suddath v. Parks,* 914 S.W.2d at 912; *Gray v. Amos,* 869 S.W.2d 925, 926 (Tenn. Ct. App. 1993); *McDowell v. Moore,* 863 S.W.2d 418, 420 (Tenn. Ct. App. 1992). The court must disregard all countervailing evidence and must take the strongest legitimate view of the evidence that favors the nonmoving party, *Haynes v. Hamilton County,* 883 S.W.2d 606, 613 (Tenn. 1994); *Speaker v. Cates Co.,* 879 S.W.2d 811, 813 (Tenn. 1994), and must allow all reasonable inferences in the nonmoving party's favor, *Byrd v. Hall,* 847 S.W.2d at 210-11; *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).

**B.**

We first take up the vicarious liability claims that have taken on new dimensions since the complaint was first filed. The original complaint named the hospital and unnamed members of its nursing staff as defendants and alleged in most general terms that the hospital was liable for the negligent conduct of its "employees and/or agents." While the complaint is unclear concerning whether it predicated the hospital's liability on pre-surgical, post-surgical conduct or both, it was clearly directed toward the conduct of the hospital's nursing staff.

The plaintiffs later obtained affidavits to oppose the hospital's motion for summary judgment. These affidavits stated that Ms. Knight's orthopaedic surgeon and anesthesiologist breached their standard of care and that their failure to stabilize Ms. Knight before surgery proximately caused her injuries. Despite this evidence, the plaintiffs never attempted to amend their complaint to name any of Ms. Knight's treating physicians as defendants or to allege that the physicians were "employees and/or agents" of the hospital and that their negligence proximately caused Ms. Knight's injuries. Only after the trial court granted the motion for summary judgment did the plaintiffs assert that Ms. Knight's orthopaedic surgeon and anesthesiologist were "employees and/or agents" of the hospital.

## The Claims Based on the Physicians' Conduct

The trial court appears to have dismissed the vicarious liability claims based on the actions of Ms. Knight's orthopaedic surgeon and anesthesiologist solely because neither of these physicians were "a party to this case directly or by reference." While a vicarious liability claim does not require the plaintiff to name as parties the agents or employees of the entity sought to be held liable, we have concluded that other, more proper grounds exist for dismissing these claims.[3]

---

[3]This court may affirm a decision based on principles different from those relied on by the trial court. *Continental Cas. Co. v. Smith,* 720 S.W.2d 48, 50 (Tenn. 1986); *Dudley v. Unisys Corp.,* 852 S.W.2d 435, 439 (Tenn. Ct. App. 1992). Tenn. R. App. P. 36(a) requires us to base our decision on the controlling legal principles, even though they have not been cited or relied (continued...)

The plaintiffs failure to name the physicians in their original complaint or to seek to amend their complaint either to make them named parties or to state more clearly a vicarious liability claim against the hospital based on the physicians' conduct do not necessarily justify granting a summary judgment. Federal courts construing the federal counterpart to Tenn. R. Civ. P. 56 have refrained from granting a summary judgment where the parties show by affidavit or otherwise that they have a meritorious case that they have failed to plead. *Marsh v. Austin-Ft. Worth Coca-Cola Bottling Co.,* 744 F.2d 1077, 1079 n.4 (5th Cir. 1984); 10A Charles A. Wright et. al., *Federal Practice and Procedure* § 2721, at 43 (2d ed. 1983).

Tenn. R. Civ. P. 56.03 directs the courts to consider the pleadings when disposing of a motion for summary judgment. The role of unverified pleadings in this context is not evidentiary,[4] *see Hillhaven Corp. v. State ex rel. Manor Care, Inc.,* 565 S.W.2d 210, 212 (Tenn. 1978); *Price v. Mercury Supply Co.,* 682 S.W.2d 924, 929 n.5 (Tenn. Ct. App. 1984), but rather is to frame the issues and to show the nature of the cause of action or defense. *Ratner v. Young,* 465 F. Supp. 386, 389 n.5 (D.V.I. 1979); Edward Brunet, *Summary Judgment Materials,* 147 F.R.D. 647, 652-53 (1993). The formal issues framed in the pleadings are not controlling on a motion for summary judgment. A court should also consider the issues presented by the other materials offered by the parties to determine whether the motion should be granted. 10A Charles A. Wright et al., *supra,* § 2721.

Accordingly, courts must examine the pleadings both in terms of their content at the time of their submission and as they might be amended at some later date. If an amendment would change the outcome of the motion for summary judgment, the amendment should be permitted and the motion for summary judgment be denied. 10A Charles A. Wright et al., *supra,* § 2722, at 48. Thus, courts should not grant a motion for summary judgment without first considering

---

[3](...continued)
upon by either party. *Nance v. Westside Hosp.,* 750 S.W.2d 740, 744 (Tenn. 1988); *City of Memphis v. IBEW, Local 1288,* 545 S.W.2d 98, 100 (Tenn. 1976).

[4]A pleading verified by a party would be tantamount to an affidavit, and accordingly, the factual statements contained in a verified complaint would be considered evidentiary.

a pending motion to amend, *Henderson v. Bush Bros. & Co.,* 868 S.W.2d 236, 237-38 (Tenn. 1993), and they should treat the pleadings as though they had been amended to conform to the facts set forth in the affidavits, 6 James W. Moore et al., *Moore's Federal Practice and Procedure* ¶ 56.10 (2d ed. 1996), or at least construe material shifting a legal theory as a motion to amend the pleadings. *Sherman v. Hallbauer,* 455 F.2d 1236, 1242 (5th Cir. 1972); *Castner v. First Nat'l Bank,* 278 F.2d 376, 384-85 (9th Cir. 1960).

Based on these principles, the trial court should have viewed the complaint in light of the plaintiffs' later expanded vicarious liability claims based on the conduct of Ms. Knight's treating physicians. While these allegations make out a claim against the hospital, they are not necessarily sufficient to withstand a motion for summary judgment. In order to survive the motion, the plaintiffs must demonstrate in some appropriate fashion that they will be able to prove at trial that Ms. Knight's physicians were "employees and/or agents" of the hospital. The plaintiffs have failed on that score.

This court has held that a hospital may be held liable for the negligent acts of its apparent agents and that members of the hospital's medical staff may be considered to be its apparent agents under certain circumstances. *White v. Methodist Hosp.,* 844 S.W.2d 642, 647-48 (Tenn. Ct. App. 1992). While the plaintiffs have rather belatedly invoked the *White* case, they must do more in order for their claim to survive the hospital's motion for summary judgment. The plaintiff in the *White* case actually presented proof in opposition to the hospital's motion for summary judgment concerning the physician's relationship with the hospital, the manner in which the physician was selected to treat the patient, as well as other proof relevant to their apparent agency theory. Thus, both the pleadings and proof in the *White* case made out a claim that the staff anesthesiologist was the apparent agent of the hospital.

This record contains no similar proof. While the plaintiffs have asserted that Ms. Knight's orthopaedic surgeon and anesthesiologist were apparent agents of the hospital, they have presented no proof on this issue. Bare allegations will not withstand a motion for summary judgment, especially when approximately

twelve months have elapsed between the filing of the motion and its submission to the court and when there has been no request for additional discovery time pursuant to Tenn. R. Civ. P. 56.06. Thus, the plaintiffs' vicarious liability claims based on the theory that Ms. Knight's orthopaedic surgeon and anesthesiologist were apparent agents of the hospital were appropriately dismissed on summary judgment.[5]

### The Claims Based on the Nurses' Conduct

Ms. Knight's sisters and caretaker have also alleged that the hospital is vicariously liable for the negligent acts of its nursing staff. To support their claim, they introduced an affidavit of a recovery room nurse containing her expert opinions concerning the care Ms. Knight received while hospitalized. Much of this affidavit related to the conduct of Ms. Knight's treating physicians; however, the nurse also concluded that Ms. Knight's medical records indicated that the hospital's nurses had administered excessive fluids, had not kept adequate records during Ms. Knight's post-operative recovery period, and had not given Ms. Knight adequate attention while she was in the recovery room. The trial court determined that all but one paragraph of the affidavit was incompetent and that the remaining paragraph, the one dealing with record-keeping and post-operative recovery care, failed "to create a genuine issue as to the material facts of this case."

Tenn. R. Civ. P. 56.05 contains the requirements for affidavits used to support or oppose motions for summary judgment. Affiants must (1) base their statements on personal knowledge, (2) make statements that would be otherwise admissible in evidence, and (3) demonstrate that they are competent to testify to the matters contained in the affidavit. In addition, affiants referring to extraneous papers must attach sworn or certified copies of these papers to their affidavits.

Trial courts must consider three threshold questions when an expert affidavit is used to support or oppose a motion for summary judgment. First, they must decide whether the affidavit meets the requirements of Tenn. R. Civ. P.

---

[5]For the same reasons, the plaintiffs' respondeat superior claims involving Ms. Knight's physicians must also fail.

56.05. Second, they must decide whether the affiant is qualified to render an expert opinion. *See* Tenn. R. Evid. 104(a). Third, they must determine whether the statements in the affidavit will substantially assist the trier-of-fact to understand the evidence or to determine a fact in issue. *See* Tenn. R. Evid. 702. The trial court has wide discretion concerning these matters. *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 443 (Tenn. 1992); *Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.,* 813 S.W.2d 400, 406-07 (Tenn. 1991).

The opinions of a competent expert may be excluded under Tenn. R. Evid. 703 "if the underlying facts or data indicate a lack of trustworthiness" or under Tenn. R. Evid. 403 "if its probative value is substantially outweighed by the danger of . . . confusion or the issues, or misleading the jury . . ." Accordingly, one commentator has suggested that an expert opinion with a weak factual foundation may be excluded if the court determines that the jury may be inclined to give the opinion more weight than it deserves. Neil P. Cohen et al., *Tennessee Law of Evidence* § 703.5 (3d ed. 1995).

The recovery room nurse who prepared the affidavit in opposition to the hospital's motion for summary judgment adequately demonstrated that she is competent to render an expert opinion with regard to the standard of care of surgical and recovery room nurses. However, her affidavit is deficient in several other material respects. First, she did not attach the portions of Ms. Knight's medical records to which she refers in her affidavit. Second, her statements contain several substantial factual errors indicating that she misread or misunderstood the medical records with regard to Ms. Knight's intake and discharge of fluids. Third, her conclusions with regard to the administration of fluids overlooks the plain fact that the nurses were administering the fluids at the direction of Ms. Knight's physicians.[6]

---

[6]Except for emergency situations, only a physician may prescribe treatment for a hospitalized patient. Tenn. Comp. R. & Regs. r. 1200-8-3-.02(7)(a)(2) (1994) ("No patient shall be given medication, special diet, or treatment except upon physician, dentist, or podiatrist's order . . ."); Tenn. Comp. R. & Regs. r. 1200-8-4-.01(5) (1993) ("Except in emergencies, no medication or treatment shall be given or administered to any patient in a hospital except on the order from a physician, dentist or podiatrist lawfully authorized to give such an order.")

Determining when factual errors undermine the admissibility of an expert's opinion rather than its weight is sometimes difficult. In this case, however, we have determined that the trial court properly refused to consider the recovery room nurse's opinions with regard to the administration of fluids because the decisions concerning the administration of fluids were beyond her expertise and because the hospital's nurses were following the directions of Ms. Knight's physicians. Her opinions with regard to Ms. Knight's fluid intake more likely confused rather than assisted the trier-of-fact to understand the evidence. Since the nurse's affidavit did not meet the requirements of Tenn. R. Civ. P. 56.05, the plaintiffs have not successfully demonstrated the existence of a genuine dispute concerning the facts material to their claim based on the negligent administration of fluids.

The remaining malpractice claims relate to the nurses' record-keeping and care of Ms. Knight immediately following surgery. The plaintiffs' recovery room nurse stated that the hospital's nurses breached the applicable standard of care by not keeping adequate written records of Ms. Knight's condition between 8:00 p.m. and 10:00 p.m. following her surgery and by leaving her unattended tied to a gurney with dried vomit on her body. The hospital disputes that its records or post-operative care were inadequate. However, even if we take these factual allegations as true, the alleged conduct will not support a malpractice claim unless it proximately caused the injuries for which compensation is being sought. Nothing in the complaint or the plaintiffs' affidavits states that inadequate charting or inattention to Ms. Knight's physical hygiene while in the recovery room caused or contributed to the loss of oxygen to her brain or to the brain damage that gave rise to this suit. Accordingly, the evidence and opinions concerning the adequacy of the post-operative record keeping and attention to Ms. Knight's personal hygiene do not created a material factual dispute sufficient to stave off a motion for summary judgment.

## C.

### THE OUTRAGEOUS CONDUCT CLAIMS

The final claim involves Ms. Knight's caretaker's outrageous conduct claim. The trial court found that the hospital's permitting the caretaker to see Ms.

Knight naked in the recovery room with her arms and legs restrained and with dried vomit on her body "does not shock the conscience of the court sufficiently to find that Ms. Garland has established a claim for outrageous conduct." We concur with the trial court.

The intentional tort of outrageous conduct involves actions so outrageous in character and so extreme in degree as to be beyond the pale of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 478-79, 398 S.W.2d 270, 274 (1966); *Hartsell v. Ft. Sanders Reg'l Med. Ctr.,* 905 S.W.2d 944, 948 (Tenn. Ct. App. 1995); *Weathers v. Pilkinton,* 754 S.W.2d 75, 77 (Tenn. Ct. App. 1988). The conduct must also cause serious or severe mental injury - the type of injury occurring when a reasonable person would be unable to cope adequately with the mental stress engendered by the circumstances. *See Camper v. Minor,* 915 S.W.2d 437, 446 (Tenn. 1996) (defining "serious or severe emotional injury" in the context of the tort of negligent infliction of emotional distress); *Swallows v. Western Elec. Co.,* 543 S.W.2d 581, 582 (Tenn. 1976).

Trial courts must, in the first instance, determine whether the conduct described in the complaint is atrocious and excessive enough to warrant a recovery for outrageous conduct. *Medlin v. Allied Inv. Co.,* 217 Tenn. at 481, 398 S.W.2d at 275; *Alexander v. Inman,* 825 S.W.2d 102, 105 (Tenn. Ct. App. 1991). The undisputed evidence before the court was that the recovery room staff was required to restrain Ms. Knight because she became very restless and disoriented in the surgical intensive care unit. Her caretaker insisted on visiting her there and observed her in the restraints and also observed that she was unclothed and that she had dried vomit on her body.

Seeing her employer and friend in this condition must have been unsettling to Ms. Knight's caretaker, as it would have been to any person unfamiliar with the condition of patients immediately following surgery. It does not follow, however, that Ms. Knight's condition in the recovery room or the hospital's decision to permit her caretaker to visit her there constitutes legally actionable outrageous conduct. We concur with the trial court's conclusion that Ms. Knight's condition

in the recovery room, as described by her caretaker, does not rise to the level of outrageous conduct.

## III.

We affirm the summary judgment dismissing the malpractice and outrageous conduct claims and remand the case to the trial court for whatever further proceedings may be required.  We also tax the costs of this appeal to the Estate of Alta M. Knight and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
SAMUEL L. LEWIS, JUDGE