# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 21, 2012

No. 10-60553

Lyle W. Cayce
Clerk

DAVID C. JOHNSON,

Plaintiff–Appellant,

v.

CHRISTOPHER B. EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS; BARBERS EXAMINATION BOARD AS JOHN DOE NUMBER 2; STATE HEALTH DEPARTMENT AS JOHN DOE NUMBER 3; AMERICAN CORRECTION ASSOCIATION AS JOHN DOE NUMBER 4; SOUTH MISSISSIPPI CORRECTION INSTITUTION AS JOHN DOE NUMBER 1, same as Mississippi Department of Corrections Commissioner, Christopher Epps,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:07-CV-719

Before KING, BARKSDALE, and OWEN, Circuit Judges.

PER CURIAM:[*]

David Johnson, Mississippi prisoner #02000, brought this civil rights action alleging that Commissioner Christopher Epps of the Mississippi Department of Corrections violated his constitutional rights by implementing

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60553

policies and procedures that Epps knew or should have known would expose Johnson and other inmates to communicable diseases through unsanitary barbering procedures. Johnson also sued several other defendants for civil rights violations, and he asserted state-law claims against all defendants. He sought injunctive relief as well as actual and punitive damages. The district court granted summary judgment for the defendants. We reverse in part, affirm in part, and remand for further proceedings.

## I

Johnson's complaint, filed pro se, asserted a claim under 42 U.S.C. § 1983 for violations of his federal constitutional rights as well as state-law claims of illegal barbering, negligence, attempted murder, and failure to protect from contagious diseases. He sought an injunction and damages totaling $15 million: $5 million in actual damages, $5 million in punitive damages, and $5 million for future damages.

The complaint alleged that prison officials forced inmates to work as unlicensed barbers and that the barbers routinely used clippers and razors without sanitizing them after each use. Johnson contended that inmates who had diseases such as HIV and hepatitis were cut or nicked by the clippers and razors, which contaminated the instruments with blood, and the contaminated clippers and razors then were used on uninfected inmates like Johnson, who were accordingly exposed to contaminated blood when they were cut or nicked by the barbers. In addition to such exposure, Johnson alleged that he contracted a skin abrasion and barber's itch. Johnson's complaint also stated that he was forced to have his hair cut by the barbers when he entered the prison, under threat of physical harm.

The original complaint named the Mississippi Department of Corrections (MDOC) and "John Does" as defendants. Informed by the magistrate judge that MDOC was not a proper defendant under § 1983, Johnson replaced it with its

No. 10-60553

commissioner, Christopher Epps, "in his official and supervisor [sic] capacity" and incorporated his prior allegations against MDOC as against Epps. The magistrate judge later ordered Johnson to name the John Does; Johnson responded by adding the Mississippi Barbers Examination Board, State Health Department, and the American Correctional Association, all of which he claimed knew or should have known about the procedures but did nothing to stop them.[1]

The magistrate judge held a hearing to, among other things, screen the complaint under 28 U.S.C. § 1915A, which provides for early review of a prisoner's complaint against a government or its officials. The magistrate judge issued an "Omnibus Order" summarizing the proceeding. She concluded that Johnson failed to state a claim upon which relief could be granted against the defendants other than Epps and so did not order them served with process. She also stated that Johnson "has the option of cutting his hair himself" and had done so in the past year. Johnson filed what he termed a "motion in response" to the order, clarifying that, while he had cut his own hair, he did so in violation of prison rules and could face discipline if caught; he alleged that, in fact, he had no choice but to use the prison barbershop.

Defendant Epps then moved for summary judgment, contending that he was entitled to qualified immunity, asserting that no facts alleged in the complaint could overcome that immunity. He also argued that Johnson failed to demonstrate deliberate indifference or show a serious injury beyond speculation about disease exposure. Johnson's response to that motion added further allegations, including that Epps personally put in place policies that violated barbering laws and led to Johnson's injuries. He asserted that "placing

---

[1] Johnson named the "American Correction Association," but it appears he intended to name the American Correctional Association, which has in the past used the address he provided for the court to serve process. The "Barbers Examination Board" appears to be the State Board of Barber Examiners. *See* MISS. CODE ANN. § 73-5-1.

No. 10-60553

this plaintiff in line with other inmates" with serious diseases and forcing him to get his hair cut amounted to deliberate indifference. He also alleged that the prison, since the commencement of the suit, had adopted a new policy requiring sanitary practices in the barbershop, but he claimed that inmates could testify that the policy was "on paper only" and was not enforced. With respect to showing a serious injury, Johnson pointed out that his head was cut, bled, and became infected and swollen.

Though Epps's motion was styled a summary judgment motion, the magistrate judge's Report and Recommendation analyzed it under the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The magistrate judge concluded that Johnson's claim against Epps (in his official capacity) was barred by Eleventh Amendment sovereign immunity and that the complaint did not allege that Epps had been personally involved in Johnson's claimed injuries nor had he implemented a policy or custom that led to the injury. Further, the magistrate judge determined that Johnson's claims were based on a theory of negligence on the part of the barbers, not on deliberate action, and that he had failed to allege an actual injury other than fear. The magistrate judge also noted that "illegal barbering" is a state-law claim not cognizable under § 1983. Finally, she concluded that no valid claims had been made against the defendants other than Epps.

Johnson objected to the Report and Recommendation. He asserted that Epps had in fact "established the customs and policies" that led to a constitutional violation and that Epps knew that these policies exposed inmates to health risks. The district court, noting that it considered the objection, then adopted the Report and Recommendation as its order, granted summary judgment to Epps, and dismissed the suit with prejudice.

No. 10-60553

## II

We liberally construe pleadings made by pro se plaintiffs.[2] In previous decisions and when justice so required, we have held that filings such as a memorandum in opposition to summary judgment and an opposition to a magistrate judge's report and recommendation should have been construed by the district court as motions to amend the complaint.[3] In many of these cases, we emphasized that no responsive pleading had been filed, meaning the plaintiff was still entitled to amend as a matter of course,[4] but we have also said that later filings should be treated as motions to amend even in cases in which there had been a responsive pleading and granting leave to amend was within the court's discretion.[5]

Because Johnson pursues his claim pro se, the district court should have liberally construed his pleadings. Johnson's complaint was met with an answer from Epps, so Johnson was no longer entitled to amend without leave of the court or Epps's permission.[6] Nonetheless, our precedents counsel that the district court should have considered Johnson's "response" to the Omnibus Order, his memorandum opposing summary judgment, and his objection to the

---

[2] *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers").

[3] *See, e.g., United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) (per curiam) (objection to magistrate judge's report); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972) (motion in opposition to summary judgment filed by counsel).

[4] *See, e.g., Barksdale v. King*, 699 F.2d 744, 747 (5th Cir. 1983) (per curiam); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979).

[5] *See, e.g., Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1081 (5th Cir. 1991) (per curiam); *Sherman,*455 F.2d at 1242. *But see United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992) (refusing to consider issues raised in objection to magistrate judge's findings because government had filed a responsive pleading and prisoner seeking post-conviction relief had not sought leave to amend).

[6] FED. R. CIV. P. 15(a).

No. 10-60553

Report and Recommendation as motions to amend his complaint to clarify the allegations made against Epps.

We review the district court's failure to allow such an amendment for abuse of discretion.[7] While "leave to amend is by no means automatic" and is "entrusted to the sound discretion of the district court,"[8] Rule 15(a) requires that it be granted freely "when justice so requires."[9] "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."[10] With this policy in mind, the district court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[11] "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."[12]

Prior to the filings at issue here, Johnson had already twice amended his complaint, but those amendments were made pursuant to the magistrate judge's orders that Johnson name appropriate defendants; the magistrate judge did not inform him of any other deficiencies in need of modification, and Johnson did not

---

[7] *Riascos*, 76 F.3d at 94.

[8] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

[9] FED. R. CIV. P. 15(a)(2).

[10] *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

[11] *Jones*, 427 F.3d at 994 (citing *Dussouy*, 600 F.2d at 598).

[12] *Dussouy*, 660 F.2d at 598.

No. 10-60553

attempt to address any.  The later filings do not appear to have been made in bad faith or with undue delay: Johnson corrected the magistrate judge's misunderstanding about his ability to cut his own hair in a response approximately two weeks after the Omnibus Order, before Epps filed for summary judgment, and the initial error seemed to be due to a lack of clarity in Johnson's testimony rather than any ill intent.  Johnson's specific allegations about Epps's role, made in opposition to the summary judgment motion, likewise do not evince a desire to hide the allegations from Epps or delay adjudication but rather an attempt by an incarcerated pro se plaintiff to comply with pleading requirements of which he may not have been fully aware until his deficiencies were brought to his attention.  Because very little discovery seems to have taken place and the motion for summary judgment focused on the complaint rather than any evidence, it is doubtful Epps would suffer any prejudice from allowing amendment, as he would retain every opportunity to defend against the allegations.[13]  Finally, it does not appear as though amendment would have been futile; as explained more thoroughly below, adding these allegations to the complaint will enable Johnson to state a claim for relief under the Eighth Amendment.

Consequently, the district court should have treated these filings as motions to amend and should have granted them.  We will consider the merits of Johnson's complaint as if it had been so amended.[14]

---

[13] *Compare Cranberg v. Consumers Union of U.S., Inc.,* 756 F.2d 382, 392 (5th Cir. 1985) (approving denial of amendment filed eighteen months after complaint, after all evidence had been presented) *with Sherman v. Hallbauer*, 455 F.2d 1236, 1239, 1242 (5th Cir. 1972) (construing a response to a motion for summary judgment as a motion to amend that should have been granted, despite a "sudden[] shift[]" in theory of the case made "late in the day").

[14] *See Barksdale v. King*, 699 F.2d 744, 747 (5th Cir. 1983) (per curiam) (construing opposition to magistrate's report as amendment to the complaint, then assessing whether complaint sufficiently stated a claim).

No. 10-60553

## III

The magistrate judge's Report and Recommendation, adopted by the district court, concluded Johnson's complaint failed to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). We review a dismissal under this provision de novo, applying the same standard used for Federal Rule of Civil Procedure 12(b)(6).[15] Under that rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[16] Facial plausibility means that the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] We accept all well-pleaded facts as true, but legal conclusions are not entitled to that assumption.[18]

Johnson asserted claims against Epps in both his official and supervisory capacities, seeking injunctive relief and damages. A claim for damages against a state official in his official capacity "is no different from a suit against the State itself," so the official is not a "person" subject to a damages suit under § 1983.[19] Consequently, the part of the claim seeking damages against Epps in his official capacity was properly dismissed. A state official may, however, be sued for prospective injunctive relief.[20] With respect to the supervisory claims,

---

[15] *Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002) (per curiam).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[17] *Id.*

[18] *Id.*

[19] *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *see also Quern v. Jordan*, 440 U.S. 332, 340-41 (1979) (holding that § 1983 does not abrogate the states' Eleventh Amendment immunity).

[20] *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *see also Will*, 491 U.S. at 71 n.10 ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State." (internal quotation marks omitted)).

8

No. 10-60553

an official may not be held personally liable on a theory of vicarious liability, but "can be held liable when the 'enforcement of a policy or practice results in a deprivation of federally protected rights.'"[21]

To establish a violation of the Eighth Amendment, a prisoner must show that a prison official was deliberately indifferent to a substantial risk of serious harm to the prisoner.[22] A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[23] A prisoner need not show "serious current symptoms" or an actual injury to state a valid Eighth Amendment claim;[24] it is enough that the prison conditions "pose an unreasonable risk of serious damage to his future health."[25] In a prior unpublished opinion, this court concluded that allegations that inmates were required to share communal razors without disinfecting them between uses, subjecting inmates to the risk of exposure to HIV and hepatitis, was sufficient to avoid dismissal.[26]

With respect to deliberate indifference, Johnson's complaint alleged that Epps "set in motion a ser[ies] of events" that led to Johnson's injuries and "put in place policies in an unlawful manner" that disregarded barbering laws and led

---

[21] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)).

[22] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

[23] *Id.* at 837.

[24] *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

[25] *Id.* at 35 (holding that plaintiff stated a claim based on exposure to environmental tobacco smoke from other inmates' cigarettes).

[26] *Gomez v. Warner*, No. 94-60530, 1994 WL 612371 at *2-*3 (5th Cir. 1994) (per curiam) (citing *DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990)).

to Johnson's exposure to diseases.[27]  Specifically, he claimed that Epps forced inmates to act as barbers (in violation of state law) and required the sharing of barber clippers covered in infected blood from other inmates.  He later alleged, in his response to the summary judgment motion, which we construe as an amendment to his complaint, that "numerous" inmates had contracted diseases. He suggested that Epps was aware of this and was avoiding providing discovery for that reason.  Further, he claimed that a new policy had been promulgated (possibly in response to this lawsuit) that mandated more sanitary procedures, which could indicate Epps's subjective awareness of the problem, but he asserted that the policy was not being enforced.  Finally, Johnson made clear on several occasions that, despite some confusion on the issue, he did not have the option to cut his own hair rather than utilize the services of the prison barbershop.

Johnson's filings are sufficient to state a claim.  Though he alleges only limited facts, these facts permit a reasonable inference that Epps has acted with deliberate indifference by implementing a policy under which inmates use unsterilized instruments on other inmates.  Johnson alleges that inmates with communicable diseases have in fact infected other inmates.  Such a policy "pose[s] an unreasonable risk of serious damage to [Johnson's] future health." Taking Johnson's allegations as true, Epps required barbers to use and reuse clippers and razors contaminated with blood.  The district court erred when it dismissed, for failure to state a claim, Johnson's claims against Epps in his official capacity (for injunctive relief only) and in his supervisory capacity.

---

[27] In the complaint, Johnson refers to the acts of "defendant(s)," referring to MDOC and the then-unnamed John Does.  To comply with an order of the magistrate judge, Johnson amended his complaint to add Epps and incorporated his former allegations by adding, "all that's stated about M.D.O.C. is stated about Christopher Epps."  Liberally construing his complaint, as we must, we read any allegations originally made against "defendant(s)" as being made against Epps.

No. 10-60553

## IV

In addition to assessing whether Johnson stated a claim, the Report and Recommendation also addressed Epps's assertion of qualified immunity. "This court reviews *de novo* the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity."[28] Any immunity would apply only to the claims for damages, as qualified immunity does not extend to suits for injunctive relief under § 1983.[29]

In determining whether qualified immunity has been negated at the pleading stage, this court applies a two-step analysis. Viewing the evidence in the light most favorable to the plaintiff, the court considers whether the defendant's conduct violated the plaintiff's constitutional rights.[30] If so, the court considers whether the defendant's conduct was "objectively unreasonable in light of clearly established law" at the time of the action in question.[31] The court may make those inquiries in either order.[32]

The district court held that Johnson had not alleged a constitutional violation, so it proceeded no further in its qualified immunity analysis. Because we conclude that Johnson has alleged a constitutional violation, however, we must address the second step of the qualified immunity analysis.

A "clearly established" constitutional right must be specified at the appropriate level of generality in order to hold an official personally liable for violating it; "[t]he contours of the right must be sufficiently clear that a

---

[28] *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

[29] *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

[30] *Freeman*, 483 F.3d at 410.

[31] *Id.* at 411.

[32] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

reasonable official would understand that what he is doing violates that right."[33] This does not require that the exact same action must previously have been held unconstitutional, but only that, in light of pre-existing law, the unlawfulness must have been apparent.[34]

In *Helling v. McKinney*, the Supreme Court held that a prison official's deliberate indifference to the potential future health risks of exposure to environmental tobacco smoke could constitute a claim under the Eighth Amendment.[35] The Court analogized the case before it with hypothetical situations in which prison officials were deliberately indifferent to other types of potential harms, such as "exposure of inmates to a serious, communicable disease," and expressed its view that such indifference would also be actionable even if "the complaining inmate shows no serious current symptoms."[36]

Here, Johnson has alleged that the policies and practices that Epps implemented for the prison barbershop exposed Johnson to such serious, communicable diseases and that Epps was aware of this risk and did nothing to eliminate that risk. In light of *Helling*, a reasonable official would understand that operating the barbershop in this fashion would violate Johnson's rights. As a result, Epps is not entitled to qualified immunity.

## V

In addition to Epps, Johnson asserted Eighth Amendment claims against the State Board of Barber Examiners, the State Health Department, and the American Correctional Association, replacing his original John Doe defendants. In screening the complaint, the magistrate judge determined that Johnson failed

---

[33] *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

[34] *Id.*

[35] *See Helling v. McKinney*, 509 U.S. 25, 35 (1993).

[36] *Id.* at 33.

to state a claim against these entities and did not order process to be served upon them.

To the extent that the State Board of Barber Examiners and the State Health Department are state entities that can be sued for injunctive relief under § 1983,[37] Johnson's assertions regarding their conduct do not allege that they were aware of facts from which the inference could be drawn that Johnson faced a substantial risk of serious harm and that they also drew that inference.[38] At most, he has alleged that they failed in their state-law oversight responsibilities, which does not amount to a federal constitutional violation.

With respect to the American Correctional Association, Johnson appears to allege that the organization violated his constitutional rights by accrediting the prison despite the barbershop conditions and issues with the law library and by ignoring complaints made to inspectors by prisoners. Johnson alleges that all defendants "acted 'under color of state law,'" but the Association is not a state agency. "To act 'under color' of law does not require that the accused be an officer of the State";[39] it would be enough to be a willful participant alongside a state agent or to be an entity that performs a traditionally governmental function.[40] But Johnson has not explained how the Association's approval of prison conditions was an act under color of state law that deprived him of any rights. We affirm the district court's dismissal of claims against these defendants.

---

[37] *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

[38] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[39] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

[40] *Id.*; *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (allowing suit against private prison-management company and its employees).

No. 10-60553

## VI

Johnson also brought claims against all defendants for negligence. Under the Mississippi Tort Claims Act, government entities and their employees acting within the scope of their employment are not liable for claims from, among others, "an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution."[41] State prisons and their employees are covered by this statute,[42] as are the State Board of Barber Examiners and Department of Health. Accordingly, Johnson's negligence action cannot go forward against them. The American Correctional Association is not covered by the statute, but the negligence claim in Johnson's original complaint pertains only to the prison barbers. He specifically implicates the Association only in his constitutional claims, never providing any facts supporting an inference of negligence. We affirm the district court's dismissal of the negligence claims.

## VII

Johnson also alleges claims for illegal barbering[43] and attempted murder, both criminal offenses with no express provision for a civil cause of action. "The general rule for the existence of a private right of action under a statute is that the party claiming the right of action must establish a legislative intent, express or implied, to impose liability for violations of that statute."[44] Johnson's complaint describes the policies behind the barbering statutes, but it does not argue any legislative intent to create private enforcement for either of these offenses. Consequently, we affirm the decision below to dismiss these claims.

---

[41] MISS. CODE ANN. § 11-46-9(1)(m).

[42] *See Clay v. Epps*, 19 So. 3d 743, 746 (Miss. Ct. App. 2008); *Whitt v. Gordon*, 872 So. 2d 71, 74 (Miss. Ct. App. 2004) ("[The statute,] without exception, prohibits all claims from claimants who are inmates at the time the claim arises.").

[43] MISS. CODE ANN. §§ 73-5-9, 73-5-43 (making illegal barbering a misdemeanor).

[44] *Doe v. State ex rel. Miss. Dep't of Corrections,* 859 So. 2d 350, 355 (Miss. 2003).

14

No. 10-60553

## VIII

Finally, we address Johnson's claim of inadequate access to the prison law library. Inmates have a right to "meaningful access to the courts," which *may*, but need not, include access to a law library.[45] To have standing to sue, Johnson must demonstrate an actual injury stemming from the purported violation.[46] The district court correctly concluded that Johnson had not alleged any actionable prejudice or harm that resulted from the prison's policies, and we affirm its decision on this issue.

*    *    *

For the foregoing reasons, we REVERSE the judgment of the district court in part, AFFIRM in part, and REMAND for further proceedings.

---

[45] *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 830 (1977)).

[46] *Id.* at 351.