Angela **SCHLACTER–JONES,**
**Plaintiff–Appellant,**

v.

**GENERAL TELEPHONE OF CALIFORNIA; Patricia Leathers; Carol Todd; Doug Bartrip, Defendants–Appellees.**

No. 89–56033.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1990.

Decided June 17, 1991.

Mark F. Sullivan, GTE California Inc., Thousand Oaks, Cal., for defendants-appellees.

Before WALLACE, Chief Judge, O'SCANNLAIN and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Angela Schlacter–Jones was terminated by GTE California, Inc. because she tested positive for drugs. The terms and conditions of her employment were governed by a collective bargaining agreement between GTE and her union, the Communications Workers of America. She appeals the district court's grant of summary judgment in favor of GTE and its employees, Patricia Leathers, Carol Todd and Doug Baxter (together, "GTE") and the district court's denial of her motion for leave to amend the complaint.

Schlacter–Jones's appeal requires that we revisit whether § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts various state law and state constitutional claims.[1] The district court concluded that each is preempted. The court also denied Schlacter–Jones's motion for leave to amend, filed after GTE moved for summary judgment, because of undue delay and futility of the amended pleadings. The district court exercised jurisdiction pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. §§ 1441, 1446, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

Schlacter–Jones, a member of the Communications Workers of America ("Union"), began working for GTE as a customer representative in 1980. Article X, Section 1 of the Collective Bargaining Agreement ("CBA") provides that covered em-

Peter F. Laura (argued the case) and Leroy S. Walker (signed the briefs), Los Angeles, Cal., for plaintiff-appellant.

1. Schlacter–Jones also asserts a claim under 42 U.S.C. § 1985 on which the district court granted summary judgment on the ground that she provided no evidence of racial animus. As this was undoubtedly correct, we shall not discuss it further.

ployees may not be suspended or discharged except for just cause.

In March 1987, GTE unilaterally implemented a Drug and Alcohol Policy ("Drug Policy") which provides in part:

Employees exhibiting signs of impairment or intoxication, performance deficiencies and/or behavioral patterns inconsistent with their normal behavior, will be required to submit to drug and alcohol screening tests.... Employees whose test results are positive for drugs and/or alcohol will be subject to discharge.

GTE Drug and Alcohol Policy, §§ 3.06 & 3.11. In September 1987, GTE specifically advised Schlacter–Jones of this policy and warned her of the consequences of violations.

On January 27, 1988, GTE supervisors observed Schlacter–Jones moving around erratically, slurring her speech and having difficulty handling customer calls. Pursuant to the Drug Policy, GTE required Schlacter–Jones to submit to a "fitness for duty" test and a drug screening test. The company suspended Schlacter–Jones pending the results of the urinalysis test. On January 29, 1988, GTE fired her when the drug tests revealed the presence of cocaine.

The Union then instituted grievance proceedings under Article XII of the CBA challenging GTE's suspension and discharge of Schlacter–Jones. The parties submitted the matter to arbitration when the grievance procedure failed to resolve the dispute. The Union, representing Schlacter–Jones, contended that the Drug Policy was invalid as an unlawful change in the terms and conditions of employment and that GTE could not discipline Schlacter–Jones under that policy. The arbitrator found that the policy was not the product of bilateral negotiations between GTE and the Union, but concluded that there was insufficient evidence to find that GTE's Drug Policy constituted a unilateral and illegal change in the terms and conditions of employment under the CBA. In all other respects, the arbitrator found in favor of the company, including that GTE discharged Schlacter–Jones for just cause and did not violate the CBA.

In June 1988, Schlacter–Jones filed in California state court this suit for wrongful termination, alleging breach of implied-in-fact contract, breach of the covenant of good faith and fair dealing, violation of state constitutional rights of privacy and due process, employment discrimination under 42 U.S.C. § 1985, fraud, conspiracy, and infliction of emotional distress. GTE then removed the case to district court. In July 1989, following discovery, GTE moved for summary judgment. In conjunction with filing her opposition to that motion, Schlacter–Jones sought leave to amend her complaint to allege a claim under 42 U.S.C. § 1983 and state law claims for defamation, negligence and wrongful discharge in violation of public policy. The district court denied the motion for leave to amend and granted summary judgment for GTE. Schlacter–Jones appeals these rulings.

## II

■ We review the grant of summary judgment de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 402 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990).

## III

Schlacter–Jones first argues that her contract and tort claims are not preempted because there is a triable issue as to whether GTE's drug testing policy constituted an illegal change in the CBA. She further argues that under *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir.1987), her claims are not inextricably intertwined with the labor contract because the CBA is silent on the issue of drug testing and the company's drug testing pol-

icy was adopted in contravention of the agreement.

### A

■ Because Schlacter–Jones proffered no evidence on the point, the district court did not err in finding no genuine controversy about whether GTE's Drug Policy was properly adopted under the CBA. Both GTE's Statement of Uncontroverted Facts and the Arbitrator's Findings and Award indicate: (1) that there was insufficient evidence for the Arbitrator to find that GTE adopted its Drug Policy unilaterally and illegally, (2) that GTE had reasonable cause to require Schlacter–Jones to submit to a "fitness for duty" test, and (3) that the discharge was for just cause. Schlacter–Jones's Statement of Genuine Issues is purely conclusory and she filed no declarations or other evidence in opposition to the motion. As a result, the Arbitrator's Findings stand uncontroverted, and the district court therefore properly concluded that the Drug Policy is part of the CBA or at least contemplated by it.[2]

### B

■ The district court reasoned that GTE's drug testing policy trumps state law claims for breach of implied contract and the covenant of good faith and fair dealing, as well as Schlacter–Jones's claims for intentional infliction of emotional distress and fraud, because these claims implicate the conditions of her employment and thus are "substantially dependent" on the CBA for resolution. It also held that her state constitutional claims for violation of her rights to privacy and due process implicate

2. In light of the uncontroverted fact that GTE's Drug Policy was a part of the terms and conditions of employment applicable to Schlacter–Jones, it is immaterial for purposes of summary judgment that no provision of the CBA explicitly deals with drug testing or gives GTE the right to adopt drug and alcohol policies.

3. In order to ensure the uniform interpretation of collective bargaining agreements, and to promote the peaceable, consistent resolution of labor disputes, § 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements."

the CBA and do not contemplate nonnegotiable rights. In so doing, the district court recognized that claims that implicate a collective bargaining agreement must be construed as a § 301 claim and adjudicated under federal labor law or be dismissed as preempted. *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1918–19; *Harris,* 897 F.2d at 402–03. The district court then applied the test for preemption of tort claims set out in *Allis–Chalmers* and first carried forward in this circuit in *Young,* inquiring "whether the state 'confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.'" (*Young,* 830 F.2d at 999 (quoting *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912)); *see also Shane v. Greyhound Lines, Inc.,* 868 F.2d 1057, 1062 (9th Cir.1989); *Utility Workers v. Southern Cal. Edison Co.,* 852 F.2d 1083, 1085–86 (9th Cir.1988), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1530, 103 L.Ed.2d 835 (1989).

■ We agree that each of Schlacter–Jones's claims is preempted.[3] In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court set out the analysis we must use in determining whether § 301 preempts state law claims. "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute." *Id.* at 405–06, 108

*Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (quoting *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). Because national labor policy requires that the collective bargaining relationship be defined by the application of an evolving uniform federal law, § 301 has a preemptive effect "so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

S.Ct. at 1881. In other words, an "application of state law is preempted by § 301 [of the LMRA] only if such application requires the interpretation of a collective-bargaining agreement." *Id.* at 413, 108 S.Ct. at 1885. Section 301, however, does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. at 1912.

■ The gravamen of Schlacter–Jones's claims for breach of implied contract and breach of the implied covenant of good faith and fair dealing is that she was discharged without good cause. The counts for constitutional violations, intentional infliction of emotional distress and fraud and deceit rest on her charge that she was unreasonably subjected to humiliating and inaccurate drug tests, and that GTE breached oral promises to keep information about her drug test and personal problems confidential. Each of these claims hinges on the contention that GTE improperly required Schlacter–Jones to submit to a drug test. There is no dispute that the CBA governs the working conditions of Schlacter–Jones's employment. A drug and alcohol testing program is a working condition "whether or not it is specifically discussed in the CBA." *Laws v. Calmat*, 852 F.2d 430, 433 (9th Cir.1988). Only by examining the CBA can one decide whether the drug policy constitutes a working condition legitimately implemented under the agreement and whether the powers granted to management under the CBA contemplate the right to require "reasonable cause" fitness for duty tests, including drug and alcohol screens.[4] These are questions of labor contract interpretation that federal law governs. Schlacter–Jones's state law claims are thus "inextricably intertwined" with an analysis of the CBA.

This case is similar to others where we have held state law challenges to a drug testing policy preempted by § 301. In *Utility Workers v. Southern California Edison Co.*, the union claimed that a ran-

dom drug testing policy violated its employees' California constitutional right to privacy. Because the terms of the collective bargaining agreement had to be consulted to resolve whether the union had bargained away the claimed constitutional rights of its members when it granted the company the right to manage the plant, direct the working force, and implement reasonable safety rules, we found the union's state law claims preempted. *Utility Workers*, 852 F.2d at 1086. In *Laws v. Calmat*, we also held preempted an employee's state law right of privacy challenge to an employer's mandatory drug testing policy. 852 F.2d at 434. The rights Laws asserted were not "wholly separate from the CBA, but [were] inextricably intertwined with it." *Id.; accord Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 120 (1st Cir. 1988) (state law claims which "can be resolved only by interpreting the meaning and scope of Articles IX and XXI of the Agreement in order to gauge the propriety of [the company's] implementation of a drug-testing program" held preempted by § 301), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Strachan v. Union Oil Co.*, 768 F.2d 703, 705 (5th Cir.1985) (state tort claims preempted when drug tests within power of company to insist upon medical examinations; claims are "grist for the mill of grievance procedures and arbitration").

We reaffirmed *Utility Workers* and *Laws* in *Stikes v. Chevron USA, Inc.*, 914 F.2d 1265 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2015, 114 L.Ed.2d 101 (1991). As part of its safety program, Chevron instituted a policy requiring employees to submit to random searches of their persons and property. Stikes was fired when he refused to allow a search of his car. In holding Stikes's state law invasion of privacy claim preempted, we relied on *Utility Workers* and *Laws*. As in the drug testing cases, and in this case, the right to privacy under California law at issue in *Stikes* "is based in major part upon the parties' reasonable expectations and

---

**4.** Rights derived from a collective bargaining agreement such as those Schlacter–Jones's complaint relate to may be direct or implied. *Allis–Chalmers*, 471 U.S. at 215, 105 S.Ct. at 1913.

these, of necessity, involve the working conditions agreed upon in the collective bargaining agreement." 914 F.2d at 1270. Because these expectations of privacy and the scope of Chevron's powers under the agreement could not be ascertained without interpreting the CBA, the claim was preempted. *Id.* at 1269.

Schlacter–Jones argues that *Lingle* and our recent decision in *Eldridge v. Felec Services, Inc.,* 920 F.2d 1434 (9th Cir.1990), change this analysis and compel a different result. We disagree. In *Lingle,* as in *Eldridge,* an employee covered under a collective bargaining agreement brought an action for retaliatory discharge for filing a workers' compensation claim.[5] Because resolution of such claims centers on the motivation of the employer in discharging the employee, and not on an interpretation of the agreement, the state causes of action are not preempted by federal labor law. *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882; *Eldridge,* 920 F.2d at 1438–39; *see also Ackerman v. Western Elec. Co., Inc.,* 860 F.2d 1514, 1517 (9th Cir.1988) (handicap discrimination claim under California's Fair Employment and Housing Act not preempted). Schlacter–Jones's claims, however, which rest primarily on the expectations of the parties and the powers of GTE, do not involve the same sort of state rights that exist, or can be proved, independently of a collective bargaining agreement. Her allegations turn on the propriety of GTE's Drug Policy and cannot be assessed without examining the CBA to determine whether the Drug Policy was a valid term and condition of employment. In this kind of case, state law, unlike state workers' compensation statutes, provides no separate or independent standard or entitlement.

■ When a working condition such as drug testing is subject to bargaining, and the employee's claim is rooted in the expectations of the parties, determining liability will necessarily involve contract interpreta-

tion and the claim will be preempted. *See Stikes,* 914 F.2d at 1269 ("Here, the district court could not ascertain Stikes' expectations of privacy at the workplace without considering the conditions of his employment enumerated in the collective bargaining agreement."). On the other hand, when the claim cannot be rooted in the bargaining process and the employee's entitlement lies outside the contract, or the claim may be resolved without regard to the deal struck between labor and management, the need for uniformity is not implicated and the claim will not be preempted.

## C

■ Schlacter–Jones contends that her state constitutional right to privacy is "nonnegotiable" and thus not properly a subject of collective bargaining such that it may be preempted. Schlacter–Jones relies on *Luck v. Southern Pacific Transportation Co.,* 218 Cal.App.3d 1, 267 Cal.Rptr. 618, *cert. denied,* — U.S. ——, 111 S.Ct. 344, 112 L.Ed.2d 309 (1990), and *Semore v. Pool,* 217 Cal.App.3d 1087, 266 Cal.Rptr. 280 (1990), for the proposition that the California constitutional right of privacy is nonnegotiable. These cases, however, involved nonunion employees challenging random drug testing programs, and do not bear on the question whether a union may or may not agree to a "for cause" drug testing program such as the one at issue here. In any event, "[w]e have expressly declined to construe California's privacy guarantee as a non-waivable right." *Stikes,* 914 F.2d at 1270 (citing *Utility Workers,* 852 F.2d at 1086). Furthermore, the question is not solely whether a state law claim is *"nonnegotiable"*; it is whether it is *"independent"* of the collective bargaining agreement.

In *Allis–Chalmers,* which involved a state tort action for bad faith handling of an insurance claim when the collective bargaining agreement incorporated a group health and disability plan, the Supreme

---

5. The Court in *Lingle* noted that Illinois courts treat the claim of retaliatory discharge as a tort action. *Lingle,* 486 U.S. at 406, 108 S.Ct. at 1881. Alaska courts characterize this claim as a

contract cause of action for breach of the implied covenant of good faith and fair dealing. *Eldridge,* 920 F.2d at 1437.

Court determined that the preemptive effect of § 301 is not limited to suits alleging contract violations but extends also to suits alleging liability in tort. Discussing the reach of its new rule, the Court noted that § 301's preemptive effect cannot confer on parties to a collective bargaining agreement the ability to exempt themselves from any and all state labor standards, or to contract for what is illegal under state law. *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. at 1911–12. In that context it held that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id.* at 213, 105 S.Ct. at 1912. Accordingly, the Court focused its analysis on whether the state tort action conferred nonnegotiable rights or depended on terms of the collective bargaining agreement. *Id.*

■ *Lingle* makes it clear that the "nonnegotiable" nature of a state right does not guarantee a finding of nonpreemption. "While it may be true that most state laws that are not preempted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption." *Lingle*, 486 U.S. at 408 n. 7, 108 S.Ct. at 1882 n. 7; *see also Stikes*, 914 F.2d at 1270 ("Furthermore, even if California courts were to deem the right to privacy nonnegotiable in the collective bargaining process, suits based upon a violation of that right might nonetheless fall within section 301's preemptive grip."); *Ackerman*, 860 F.2d at 1517 n. 2 (noting caveat in *Lingle* that nonnegotiability does not guarantee against preemption). The critical inquiry is thus whether the state law claim is "independent" of the collective bargaining agreement in the sense that its resolution does not turn on the interpretation of the agreement. *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882 ("independent" for purposes of § 301 means "resolution of the state-law claim does not require construing the collective bargaining agreement"); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 & n. 10, 107 S.Ct. 2425, 2432 & n. 10, 96 L.Ed.2d 318 (1987) ("Claims bearing no re-

lationship to a collective bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not preempted by § 301."); *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912 (preemption proper if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"). "Nonnegotiability" may be a factor in that determination, but not the only one.

■ Therefore, the question is no different and we analyze the issue no differently when the right asserted stems from the state constitution rather than a statute or the common law. While the state constitutional right to privacy is a right shared by all workers, indeed by all citizens, and in that sense exists apart from a collective bargaining agreement, we have already held that an employee's right to be free from mandatory drug testing is properly a subject of collective bargaining. *Stikes*, 914 F.2d at 1270; *Laws*, 852 F.2d at 433; *Utility Workers*, 852 F.2d at 1086. Because GTE's Drug Policy was a term and condition of employment, contemplated by the CBA, in this case the claim for violation of state constitutional rights cannot be resolved without interpreting the agreement. Thus, it is not independent and is preempted.

IV

■ The CBA between the Union and GTE provides that labor disputes shall be settled only through the grievance and arbitration procedures set forth in the contract. As the Supreme Court frequently has cautioned, courts are not to "usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal,' ... but should defer to the tribunal chosen by the parties finally to settle their disputes." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) (quoting *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960)). Therefore, in order to proceed with a § 301 suit against

the employer, the employee must show not only that her discharge was contrary to the agreement, but also must demonstrate that the union breached its duty of fair representation. *Id.* at 570, 96 S.Ct. at 1059; *Shane,* 868 F.2d at 1060. Because Schlacter–Jones has neither alleged nor adduced any evidence indicating that the Union breached its duty of fair representation in handling her grievance and arbitration hearing, the district court properly granted summary judgment in favor of GTE.

## V

Schlacter–Jones contends that the district court erred in denying her motion for leave to amend, which she brought after GTE filed its motion for summary judgment, more than a year after the filing of her complaint. Finding the "tardiness" of her proposed amendment the result of undue delay, and at least three of the four proposed causes of action futile, the district court denied Schlacter–Jones's motion. We review for abuse of discretion the district court's decision to deny leave to amend after a responsive pleading has been filed. *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." This strong policy toward permitting the amendment of pleadings, however, must be tempered with considerations of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The presence of such factors counsels against granting leave to amend.

In the exercise of its discretion, the district court properly considered the delay in the desired amendment, the fact that there was a pending summary judgment motion, and the futility of most of the proposed claims. The timing of the motion, after the parties had conducted discovery and a pending summary judgment motion had been fully briefed, weighs heavily against allowing leave. A motion for leave to amend is not a vehicle to circumvent summary judgment. *See M/V American Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1492 (9th Cir.1983); *Glesenkamp v. Nationwide Mut. Ins. Co.,* 71 F.R.D. 1, 3 (N.D.Cal.1974), *aff'd,* 540 F.2d 458 (9th Cir.1976) (per curiam). In these circumstances, in light of the combination of delay, timing of the motion, futility and the likelihood that the court would decline to exercise pendent jurisdiction over the one potentially viable pendent state claim, leave could properly be denied.[6] We therefore have no cause to disturb the district court's ruling.

AFFIRMED.

---

**6.** This case is unlike *Sherman v. Hallbauer,* 455 F.2d 1236 (5th Cir.1972), cited by Schlacter–Jones, which the Fifth Circuit itself characterized as "not the ordinary reversal of a district court's decision granting summary judgment." *Id.* at 1237. In *Sherman,* the court allowed the plaintiffs leave to amend when they finally presented a legally sound theory of the case, albeit a "frantically revised" one advanced only in "the waning moments of the pre-trial proceedings," in their opposition to summary judgment. *Id.* at 1237, 1242. "[F]air treatment for the Shermans requires that they not be deprived of their day in court simply because, for a time, their attorney did much to insure that the day would never come." *Id.* at 1242. This case does not present us with a comparable situation.