FORTY–NINER SIERRA RE-
SOURCES, INC., d/b/a/ For-
ty–Niner, Plaintiff,

v.

SUBARU OF AMERICA,
INC., Defendant

No. CVF00–6252REC SMS.

United States District Court,
E.D. California.

May 18, 2004.

862

Bonny E. Sweeney, Lerach Coughlin Stoia Geller Rudman and Robbins LLP, San Diego, CA, Michael Barry Arkin, McGeorge School of Law, Inst for the Admin of Justice, Sacramento, CA, Helen I. Zeldes, Lerach Coughlin Stoia Geller Rudman and Robbins LLP, San Diego, CA, for Plaintiff.

Evan Keith McNamara, Robert E. Davies, Caufield Davies and Donahue LLP, Sacramento, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND.

(Docs. 92, 85, 73, 125 & 128)

COYLE, District Judge.

On September 8, 2003 the court heard Defendant Subaru of America's motion for summary judgment or summary adjudication and Plaintiff Forty–Niner's cross motion for summary judgment and motion for leave to amend its First Amended Complaint. Upon due consideration of the written and oral arguments of the parties and the record herein, the court denies Plaintiff's motion for leave to amend. The court further grants Defendant's motion for summary adjudication of Plaintiff's Song–Beverly claims on the grounds that Defendant designated and authorized Plaintiff as an independent service and repair facility ("ISRF") in the State of California, and denies Plaintiff's motion for summary judgment in its entirety.

## I. Plaintiff's First Amended Complaint

Plaintiff, Forty–Niner Sierra Resources, Inc., dba Forty–Niner Subaru ("Forty–Niner"), is a California corporation and Subaru franchisee which sells and services Subaru automobiles and provides warranty services for owners of Subaru automobiles. Defendant Subaru of America, Inc. ("SOA"), is a national distributor of Subaru automobiles in the United States.

Plaintiff's class action lawsuit, on behalf of itself and all of Defendant's warranty service providers in California, alleges that SOA compensates its California warranty service providers for *parts* used in warranty service repairs at rates that violate California Civil Code § 1793.5 ("Song–Beverly").[1] Plaintiff also alleges that Defendant's conduct violates of California Business and Professions Code §§ 17200, *et seq.* ("UCL"). Plaintiff seeks direct, consequential, and statutory treble damages, declaratory and injunctive relief, and attorneys' fees.

## II. Procedural History

This case was originally filed on October 27, 1998, in Calaveras County Superior

---

1. Plaintiff does not challenge the rates that Subaru pays for the labor involved in the warranty repair services, which appear to be the same as those that are charged to consumers whose automobiles are not covered by warranty.

Court as a class action listing Forty–Niner and its owner, Richard E. Wilmhurst, as Plaintiffs. On July 21, 2000, Plaintiffs filed a First Amended Complaint ("FAC").[2] Defendant, SOA removed the case to this court on August 25, 2000.

On November 30, 2001 this court entered an order granting Defendant's motion for judgment on the pleadings on the grounds that Plaintiff Forty–Niner could not proceed under California Civil Code § 1793.5. The court denied relief under § 1793.5 because liability under section 1793.5 arises only where such service repair facilities are not provided and Plaintiff "admit[ted] that SOA authorizes their facilities to perform warranty services" in oral representations to the court. Order Granting Def.'s Mot. for J. on the Pleadings, Nov. 30, 2001.

On March 4, 2002, the court entered an order granting in part and denying in part Plaintiff's Motion for Reconsideration. In that motion, Plaintiff argued that it never admitted that Defendant had authorized and designated it a warranty service and repair facility. Plaintiff's counsel had previously made affirmative representations to the contrary: At oral argument on October 29, 2001 Plaintiff's counsel Bonny E. Sweeney represented to the court that Plaintiff was a designated ISRF. Ms. Sweeney said:

> Section 1793.2 requires the manufacturer to sell the consumer good, and that statute is broadly defined to include motor vehicles. Any manufacturer who sells consumer goods in the state of California with express warranty **must either maintain a service and repair facility in the state sufficient to service those products or it may designate independent service and repair facilities to carry out the terms of the warranty.**
>
> **Forty–Niner Subaru as well as all the other Subaru dealers in the state of California has been designated under that or the provision of section 1793.2.** In other words, Subaru of America has said, well, we are not going to provide our own warranty repair in California, but we will designate these independent service and repair facilities to do that. And **my client Forty–Niner is one of those designees.**

Tr. Proceedings, Mot. for J. on the Pleadings, October 29, 2001. Page 9:21–10:23.

Ms. Sweeney further stated:

> In its complaint, plaintiff specifically claims that Subaru does not provide its own service and repair facility in California. Rather, **it designates these independent service providers like my client Forty–Niner Subaru.** And because it does not provide its own service and repair facilities, it is subject to the provisions of the act.

Tr. Proceedings, Mot. for J. on the Pleadings, October 29, 2001. Page 15:20–15:25.

Plaintiff's counsel later explained that these representations were mis-statements. The court granted Plaintiff's Motion for Reconsideration with the following instruction; "[i]f defendant can establish that plaintiff has affirmatively been designated and authorized as an independent service and repair facility, this issue may be resolved through summary judgment." Order Grant. in Part and Den. in Part Pl.'s Mot. for Recons., Mar. 4, 2002.

**2.** Richard E. Wilmhurst is not listed as a named plaintiff on the First Amended Complaint.

On March 13, 2003 Defendant moved for summary adjudication or summary judgment. On April 7, 2003, twenty five days after Defendant submitted its motion for summary judgment, Plaintiff filed a cross-motion for summary judgment and a motion for leave to amend its FAC. Plaintiff seeks permission to amend its FAC to add an alternative claim under Song–Beverly § 1793.6, which provides recovery for independent service facilities.

## III. Defendant's Motion for Summary Judgment or Summary Adjudication

Defendant's motion for summary judgment or summary adjudication was based on four alternative theories; (1) that Plaintiff, Forty–Niner is a designated and authorized service or repair facility and therefore Song–Beverly § 1793.5 does not apply (2) that Defendant, SOA has at all times maintained in this state sufficient service and repair facilities reasonably close to all areas where its consumer goods are sold via its franchise agreements with Plaintiffs, thereby complying with Song–Beverly § 1793.2 and foreclosing recovery (3) that Plaintiff waived its right to sue Defendant (4) that the NMVB is the exclusive forum for this case or, alternatively, that the NMVB is the preferred forum for resolution of the dispute due to the NMVB's experience with warranty service contract rates. Defendant's first argument suffices to support an order for summary adjudication in its favor.

### A. Legal Standard

Under Rule 56(b) "[a] party against whom a claim, counter-claim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. Rule Civ. P 56(b). A Rule 56(b) motion should be granted by the court "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule Civ. P 56(c).

The inquiry on a motion for summary judgment is whether "a genuine issue as to any material fact" exists. The party moving for summary judgment has the burden of demonstrating that the Rule 56(c) test— "no issue as to any material fact" is satisfied and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–324, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978). The evidence presented to the court is always construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it. *See Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998).

### B. Section 1793.2 Designation and Authorization

Plaintiff alleges that Defendant violated Song–Beverly Song–Beverly § 1793.2, and Plaintiff seeks recovery under Song–Beverly § 1793.5. Song–Beverly § 1793.2(a)(1)(A) requires manufacturers of consumer goods sold in California with express warranties to

> [m ]aintain in this state sufficient *service and repair facilities* reasonably close to all areas where its consumer goods are sold to carry out the terms of those warranties *or designate and authorize* in this state as service and repair facilities *independent repair or service facilities* reasonably close to all areas where its consumer goods are sold to carry out the terms of the warranties.

Cal. Civ.Code § 1793.2(a)(1)(A) (Emphasis added).

Song–Beverly 1793.5 makes manufacturers liable to retailers for violations of Section 1793.2, as follows:

> Every manufacturer making express warranties **who does not provide service and repair facilities within this state pursuant to subdivision (a) of Section 1793.2 shall be liable** as prescribed in this section to every retail seller of such manufacturer's goods who incurs obligations in giving effect to the express warranties that accompany such manufacturer's consumer goods. The amount of such liability shall be determined as follows:
>
> .   .   .   .   .
>
> (b) In the event of service and repair, in an amount equal to that which would be received by the retail seller for like service rendered to retail consumers who are not entitled to warranty protection, including actual and reasonable costs of the service and repair and the cost of transporting the goods, if such costs are incurred, plus a reasonable profit.
>
> Cal. Civil Code § 1793.5 (emphasis added).

The first paragraph of Section 1793.5 makes it clear that liability will only be imposed if the manufacturer has not complied with Section 1793.2(a). Thus, if Defendant *either* maintained service and repair facilities *or* designated and authorized ISRF's in California, Plaintiff cannot recover under Song–Beverly § 1793.5.

### C. *Definitions*

An independent service and repair facility ("ISRF") is defined in Song–Beverly as follows:

> "Independent repair or service facility" or "independent service dealer" means any individual, partnership, corporation, association, or other legal entity, not an employee or subsidiary of a manufacturer or distributor, that engages in the business of servicing and repairing consumer goods.
>
> Cal. Civ.Code § 1791(f).

Plaintiff is an legal entity distinct from SOA that engages in the business of servicing Subaru cars: Plaintiff is an ISRF. The issue in this case is whether Plaintiff has been *designated* and *authorized* by SOA as an ISRF.

Song–Beverly does not define the terms "designate" and "authorize." The parties did not advance arguments regarding the definition of these terms. Webster's II New Riverside University Dictionary defines them as follows:

> Designate: "To indicate or specify: point out"
>
> Authorize: "1. To give authority or power to. 2. To approve or permit."

The court employs these common-sense, generally accepted definitions in its analysis of designation and authorization.

### D. *Undisputed Facts*

Defendant proffered three forms of evidence (documents, conduct, and testimony) in support of its contention that Forty–Niner is a designated and authorized ISRF. Specifically, Defendant cited the following undisputed facts:

In 1981, Plaintiff and Defendant executed a contractual agreement wherein Defendant appointed Plaintiff as an authorized dealer for Subaru *products*. This agreement reads:

> Distributor **hereby appoints Dealer as an authorized dealer for Subaru Products** and Dealer accepts the appointment under the terms and conditions of this Agreement. **Dealer assumes responsibility for the promotion, sale and service of Subaru Products** within the following primary area of responsi-

bility ...: Calaveras and Tuolumne counties ... Distributor has approved the following facilities, containing the area specified below, which Dealer will provide and use exclusively for Dealer's Subaru operations ... Parts and Service Facility Address: 1003 South Main Street, Angels Camp, California.

Defendant's Undisputed Material Fact Number 9 ("Def.'s UMF No. ___") (emphasis added).

Plaintiff and Defendant have executed similar dealership agreements, which include similar language, over the past twenty-years. Def.'s UMF Nos. 11–16.

Subsequent Dealership Agreements also incorporate the provisions of the "Subaru Dealership Agreement Standard Provisions booklet" ("Standard Provisions booklet") in their terms. Def.'s UMF Nos. 24–32. Various provisions of the Standard Provisions booklet are relevant to Defendant's motion for summary judgment, including;

**Section 5.4** of the SOA Standard Provisions booklet, which reads:

Dealer **shall display signs** meeting design, size and content specifications approved by SOA, bearing the name 'Subaru' and other Marks as appropriate, in such numbers and at such locations as will adequately **identify the** dealership location, its products and **services to the general public.**

(Def.'s UMF No. 34).

**Section 6.3** of the SOA Standard Provisions booklet, which provides:

to insure common identity of Subaru Products and services to the public, Dealer shall not use nor permit the use of the name 'Subaru' or of any other Marks, except for such purposes incident to the promotion sale and service of Subaru products pursuant to the Agreement...

(Def.'s UMF No. 36).

**Section 13.3** of the SOA Standard Provisions booklet, which reads:

WARRANTY PROCEDURE. The procedure for the processing and disposition of Warranty claims and for the return and disposition of Authorized Parts claimed to be defective shall be governed by the dealer version of the Subaru Warranty Manual and by any applicable Distributor Directive consistent with said manual. Dealer shall be reimbursed by distributor for Authorized parts and Warranty labor in accordance with Section 18.5 hereof. Dealer agrees such reimbursement shall constitute full and complete payment to Dealer for such work and further agrees that customer shall not be obligated to pay any charges for Warranty work.

(Def.'s UMF No 52).

**Section 18.5,** of the SOA Standard Provisions booklet, which states:

To the extent that Distributor requires Dealer to furnish labor or to use Authorized Parts to fulfill Dealer's obligations under Sections 9.2, 10.2, 10.4, 10.5, 11.8 or 13.3 hereof, distributor shall reimburse or credit Dealer for such Authorized Parts and/or labor as the case may be, at such rate or rates as Distributor is authorized to establish from time to time .... No claim for reimbursement shall be accepted by Distributor from Dealer later than the applicable time period established from time to time in the Subaru Warranty Policies and Procedures Manual.

(Def.'s UMF Nos. 55–56).

SOA also issued a manual entitled the Policies and Procedures Manual ("PPM") to Forty–Niner. (Def.'s UMF No. 60). Under Section 5 of the October 1991, version of the PPM, "[t]he repairing dealer will be reimbursed for: Dealer Prepara-

tion, Warranty Repairs, recall inspections and corrections, and other designated services as detailed in this manual." (Def.'s UMF No. 61). The same section sets forth warranty labor rates, body repair labor rates, and reimbursement rates for parts, accessories, and materials used in the performance of warranty service repairs.

The 1991 PPM was subsequently revised on five occasions, June of 1996, December of 1997, November of 1999, June of 2001, and June of 2002. (Def.'s UMF Nos. 63–64). Section 8.4.27 of all subsequent versions of the PPM contains the following language regarding warranty service repair reimbursement;

> Repair labor reimbursement is determined by the labor times published in the Subaru Warranty Labor Time Guide that applies to the vehicle.... labor times are representative of the time required by a trained Subaru technician in a typical Subaru dealership using normally available hand tools, equipment and Subaru special tools to perform repairs. Times include all necessary testing and adjustments unless indicated otherwise. Times are based on recommended repair procedures outlined in Subaru's service manuals, training manuals, service bulletins and the use of genuine Subaru replacement parts ... Repairs exceeding 2.0 additional hours require authorization by a Subaru service representative.

(Def.'s UMF No. 67).

The PPM outlines the manufacturer's warranty policies. The PPM states that "[a]ny and all repairs must be performed by an Authorized Subaru Dealer located in the United States." (Def.'s UMF No. 68).

Pursuant to the above agreements, Plaintiff was required to have a service center, required to have a qualified service manager, required to keep certain tools, required to perform 1,000 mile warranty services, and required to charge the manufacturer as opposed to the consumer for warranty repairs.

Defendant also submitted affidavits from witnesses who stated that Defendant closely controls the use if its mark, and does not permit the unauthorized use of its mark. Plaintiff does not dispute the assertion that "[o]nly Subaru-authorized service providers may display Subaru service signs." Nor does Plaintiff deny that Plaintiff displayed the Subaru mark at its dealership to advertise its service and repair facilities.

Finally, Plaintiff does not dispute the declarations of SOA personnel that SOA only pays for services performed by authorized service providers, and that SOA has paid Plaintiff for performing warranty repair work.

### E. *Analysis*

■ The question here is whether SOA affirmatively designated *and* authorized Plaintiff, Forty–Niner as an ISRF. Notably, the "designate and authorize" prong of the Song–Beverly Act is expressed in a conjunctive clause. Under the plain language of the statute, the manufacturer must *both* designate *and* authorize an ISRF in order to comply with California law.

### 1. *Designation*

The first question is whether SOA has designated Forty–Niner to perform warranty service repairs. As neither the statute, case law, nor the parties have defined the term "designate," the court will employ the common meaning of the word; "to indicate or specify: point out."

In its Policies and Procedures Manuals, SOA states that "Any and all repairs must be performed by an Authorized Subaru

Dealer located in the United States." This provision designates, meaning specifies or points out to others, that only "Authorized Subaru Dealers" shall perform warranty service repairs. Beginning with the Dealership Agreement of 1981, Defendant SOA expressly stated that Plaintiff was "an authorized dealer." By entering into the Dealership Agreement, Plaintiff accepted designation as an authorized dealer and agreed to service Subaru products. As an authorized dealer for Subaru products, Plaintiff has also been designated as an independent service and repair facility.

### 2. Authorization

The next inquiry is whether Defendant SOA authorized Plaintiff to serve as a warranty service and repair facility. A finding of authorization requires a showing that the manufacturer has "given authority or power to" an independent service repair facility to perform warranty services and repairs. In addition to the designation made in Dealership Agreement, two other facts suggest that Defendant has authorized Plaintiff as an independent service and repair facility.

First, the fact that Plaintiff has been paid for performing warranty service repairs suggests that Plaintiff is authorized to perform those repairs, since it is undisputed that Defendant only pays for warranty repairs provided by authorized service facilities.

Second, the court finds that Defendant meets both the "designation" and the "authorization" standards by explicitly *requiring* Plaintiff to perform certain warranty service functions (including a 1,000 mile warranty inspection, as provided in Section 10.4 of the Subaru Dealership Agreement and Standard Provisions). Pursuant to the Dealership Agreement, Plaintiff entered into a binding agreement to perform service and repairs in certain instances.

This express requirement put Plaintiff on notice that Plaintiff is responsible for performing warranty repairs. Plaintiff was aware that it had been designated as an authorized warranty service and repair facility.

### 3. Lack of an Express Written Agreement

Plaintiff generally denies that it is an ISRF without providing factual evidence to rebut Defendant's showing of designation and authorization. Instead, Plaintiff responds by arguing that there can be no showing of "designation and authorization" absent an *express contract* to that effect, and that Plaintiff is not a designated and authorized ISRF because it never expressly agreed to be one.

The lack of an express written agreement, does not rebut Defendant's proffered evidence. While a manufacturer *may* enter into a warranty service contract as a means of complying with Song–Beverly, a contractual agreement is not the only means of complying with the statute. Section 1793.2(a)(1)(B) provides that a manufacturer *"may"* enter into warranty service contracts with independent service and repair facilities as a means of complying with paragraph (1)(A). The language of Section 1793.2(a)(1)(B) is permissive: the word *"may"* indicates that a contractual agreement between a manufacturer and an ISRF is *one avenue* for complying with Song–Beverly. Section 1793.2(a)(1)(B) does not indicate that a contractual agreement between the manufacturer and the ISRF is the *only* way for the manufacturer to comply with Song–Beverly Section 1793.2(a)(1)(A). Nor does Section 1793.2(a)(1)(B) indicate whether a contractual agreement would fulfill the maintenance prong, the designation and authorization prong, or both prongs of Section 1793.2. Thus, the absence of an ex-

press written contract designating and authorizing an entity as an ISRF is not conclusive proof that of non-compliance with the designation and authorization prong of Section 1793.2(a)(1)(A).

Plaintiff's alternative theory that it cannot be found to be a designated and authorized ISRF where it did not consent to serve as an ISRF is equally unpersuasive. Song–Beverly does not require bilateral designation and authorization. It is legally and logically possible for an entity to designate and authorize another without the designee/authorized's permission. Under Song–Beverly the act of "designating" and "authorizing" may be performed unilaterally and does not require an express agreement.

Even assuming arguendo that Song–Beverly's designation and authorization clause requires a bilateral agreement, the court finds that such an agreement existed. Plaintiff accepted SOA's "designation and authorization" when it performed warranty services and billed Defendant for those services, after having received copies of Defendant's policies, which offered Plaintiff the authority to perform warranty service repairs.

Summary adjudication is granted in Defendant's favor on Plaintiff's claims under the Song–Beverly Act, on the grounds that SOA designated and authorized Forty–Niner as an ISRF. Although, Defendant never expressly designated and authorized Forty–Niner as an *ISRF* in writing, Defendant's conduct in paying for the repairs that Plaintiff actually performed, coupled with the contractual agreements that expressly required Plaintiff to perform warranty services and repairs, served to designate and authorize Plaintiff as an ISRF.

## IV. Plaintiff's Cross–Motion for Summary Judgment

For the reasons explained above, Plaintiff's corresponding motion for summary adjudication of its §§ 1793.2 and 1793.5 claims is denied.

### A. Section 1793.3

Instead of rebutting Defendant's evidence, Plaintiff argues that Defendant is liable even if Defendant designated and authorized it as an ISRF, because the rates that Defendant pays for the parts that Plaintiff uses in warranty service repairs do not comport with the requirements of Song–Beverly § 1793.3.

Plaintiff correctly points out that recovery is available in certain instances to "independent service and repair facilities" under § 1793.3. Section 1793.2(a)(1)(B) states that "warranty service contracts may provide for a fixed schedule of rates to be charged for warranty service or warranty repair work" and "the rates fixed by those contracts shall be in conformity with the requirements of subdivision (c) of Section 1793.3."

Section 1793.3, in turn, provides that the rate for warranty repair reimbursement should be based on "the actual and reasonable cost of service and repair, including any cost for parts and any reasonable cost of transporting the goods or parts, plus a reasonable profit." Nonetheless, recovery under Section 1793.3 is unavailable to Plaintiff in this case. Section 1793.3 does not apply uniformly to all independent service and repair facilities. To the contrary, recovery is only available under § 1793.3 "[i]f the manufacturer of consumer goods sold in this state for which the manufacturer has made an express warranty **does not provide service and repair facilities within this state pursuant to subdivision (a) of Section 1793.2,** ..." (Emphasis added). In other words, if the manufacturer complies with § 1793.2(a), an independent service and repair facility has no basis for recovery

under Section 1793.3. If the manufacturer has "maintained" service and repair facilities or "designated and authorized" independent service and repair facilities, recovery is prohibited.

Here, SOA has designated and authorized Forty–Niner as an independent service and repair facility. Consequently, Forty–Niner is not entitled to recovery under Section 1793.3.

Plaintiff's motion for summary adjudication of its Section 1793.2, 1793.3, 1793.5, and 1794.1 claims is denied.

### B. Section 17200

■ The court further denies Plaintiff's motion for summary adjudication of its Section 17200 claim. Plaintiff's cross-motion requested that the court grant summary adjudication on its Section 17200 claims under California's Unfair Competition Law ("UCL"). Plaintiff raised three grounds for relief under UCL Section 17200, alleging that Defendant's practices are unlawful, unfair, and fraudulent. The court finds that Defendant complied with Song–Beverly and, therefore, Plaintiff is not entitled to Summary Judgment on the grounds that Defendant violated the "unlawful" prong of Section 17200. Plaintiff did not present any evidence or argument to the court in support of its motion for summary adjudication on the grounds that Defendant's practices were unfair or fraudulent. Therefore, Plaintiff's motion is denied with respect to the Section 17200 claim.

Defendant's motion for summary adjudication failed to address Plaintiff's § 17200 claims.

### V. Plaintiff's Motion for Leave to File an Amended Complaint

#### A. Legal Standard

Federal Rule of Civil Procedure 15(a) provides that leave to file an amended complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The standard for granting leave to amend is not particularly rigorous: "The purpose of pleading is 'to facilitate a proper decision on the merits' ... and not erect formal and burdensome impediments to the litigation process. Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey v. United States*, 481 F.2d 1187, 1190 (1973). However, "[t]his strong policy toward permitting the amendment of pleadings ... must be tempered with considerations of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure the deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Schlacter -Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir.1991)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). In determining whether to grant leave to amend, the trial court balances several factors, keeping foremost in mind the potential prejudicial effect on the defendant.

#### B. Plaintiff's Proposed Amendment

Plaintiff originally brought suit under Song–Beverly § 1793.5. Plaintiff seeks leave to add a cause of action under Song–Beverly § 1793.6. Sections 1793.5 and 1793.6 contain parallel provisions which allow *retail sellers* (§ 1793.5) and *independent service or repair facilities* (§ 1793.6) to recover if the manufacturer does not maintain service and repair facilities in California.

#### C. Defendant's Opposition

Defendant argues that Plaintiff's Motion for Leave to Amend should be denied for the following reasons: (1) Plaintiff's

amendment is offered to defeat resolution of the case through summary judgment (2) Plaintiff's amendment will cause undue delay (2) Plaintiff is raising new issues (3) Plaintiff's amendment will necessitate further "extensive" discovery by Defendant and (4) Plaintiff's amendment is frivolous and does not provide a basis for recovery.

### 1. Avoiding Summary Judgment

■ Where the primary motivation for an amendment is surviving summary judgment, the movant's motive weighs against granting leave to amend. *See Schlacter–Jones*, 936 F.2d 435 (9th Cir.1991) ("A motion for leave to amend is not a vehicle to circumvent summary judgment"). Here, Plaintiff requested leave to amend *25 days after* Defendant filed its motion for summary judgment and or summary adjudication.

Defendant moved for summary judgment on the grounds that Plaintiff is a designated and authorized ISRF. Defendant proffered uncontradicted evidence in support of that assertion. Plaintiff generally denied that it had been authorized and designated as an ISRF, but did not proffer evidence to support its position. Pl.'s Opp'n to Def.'s Statements of Undisputed Material Facts, Apr. 7, 2003 at Fact 21.

Plaintiff must realize that summary adjudication on the designation and authorization defense is likely, since Plaintiff did not present any evidence to oppose the motion. As explained in *Schlacter–Jones*, a movant may not amend the pleadings to escape summary judgment. 936 F.2d at 435. Plaintiff's motive weighs against granting leave to amend.

### 2. Undue Delay

■ Defendant characterizes the delay in filing the motion for leave to amend as "egregious." Def.'s Opp'n to Pl.'s Mot. for Leave to Am. First Am. Compl., Apr. 28, 2003, at 4. Defendant notes that it has been over four and a half years since the complaint was originally filed in superior court, over three years since the filing of the First Amended Complaint, three years since the case was removed to federal court, and over a year since this court entered its order reconsidering the Defendant's Motion on the Pleadings. *Id.* Furthermore, this motion has resulted in a trial delay in this case (trial for which was most recently re-scheduled for June 3, 2003).

Plaintiff acknowledges the delay, but argues that Defendant is exaggerating by emphasizing the time that has elapsed since the case was filed. Plaintiff argues that the true measure of the delay should be determined from the date that Plaintiff realized an alternate theory of liability existed. Plaintiff sets this date at March 4, 2002; the date of this court's ruling on Plaintiff's motion for reconsideration.

Plaintiff seeks leave to amend the FAC both "in order to improve the clarity of its pleading and in light of this Court's conclusion that plaintiff can be both a "retailer" and an "authorized dealer" under Song–Beverly." Pl.'s Mem. in Supp. of Mot. for Leave to Am. First Am. Compl., Apr., 7, 2003. Plaintiff argues that it "cannot be faulted for not bringing a motion for a leave to amend prior to a year ago" because "plaintiff could not have known four years ago that the undecided issue of law would be decided by the Court the way that it was." Pl.'s Reply at 4.

The facts underlying the court's determination that Plaintiff is a designated and authorized ISRF have been available to Plaintiff since this litigation began. Plaintiff should have included this allegation in its original complaint or its FAC. Even if Plaintiff was not originally aware that it could file as an ISRF, Plaintiff has been on

notice since March 2002 that its status as an ISRF was at issue. The prospect of summary judgment loomed over this case for nearly a year before Plaintiff acted.

Regardless of whether the court measures the length of the delay as one year or four years, the court concludes that Plaintiff inexcusably delayed in seeking leave to amend. With regard to the one year that elapsed since the March 4, 2002 Order, Plaintiff explains that "external" factors created unforeseeable problems ultimately resulting in the delay. Plaintiff's counsel explains that between March 2002 and April 2003 staffing changes and a move to a new office location prevented Plaintiff from filing the motion in a more timely fashion.

Specifically, Plaintiff's attorneys account for the delay as follows:

- In March 2002, this court granted in part Plaintiff's Motion for Reconsideration, suggesting that the matter might be disposed of via a summary judgment motion on the issue of whether Defendant designated and authorized Plaintiff as an ISRF.

- In August 2002, counsel for Plaintiff, G. Erick Rosemond left Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"). There is no evidence that Mr. Rosemond or Ms. Sweeney worked on a Motion for Leave to Amend in the five months prior to Mr. Rosemond's departure.

- In October 2002 Stacie Somers began her legal career working at Milberg Weiss. In November 2002, Ms. Sweeney asked Ms. Somers to "take over [Mr. Rosemond's] work on this case." (Somers Affidavit.—Affidavit of Stacie L. Somers 05/05/03 pages 1–2).

Plaintiff's counsel's account of the events indicates that the primary reason for the delay was the replacement of Mr. Rosemond by Ms. Somers. As a young associate, Ms. Somers explained that she needed two months to familiarize herself with the case and an additional three months to prepare the motion to amend. In her declaration Ms. Somers states that she "pursued the litigation of this case with the intention of moving the case forward without undue delay." Aff. of Stacie L. Somers, May 5, 2003, at 2. The court does not fault Ms. Somers for her unfamiliarity with the litigation.

The delay, however, is not excused by Ms. Somer's good faith effort to expedite resolution of this case. During the course of this litigation Plaintiff has been represented by not only Mr. Rosemond and Ms. Somers, but also by Ms. Sweeney, a partner at Milberg Weiss. Ms. Somer's unfamiliarity with the case does not explain Ms. Sweeney's neglect of the matter. The year-long delay between receiving this court's March 4, 2002 Order and Plaintiff's decision to file its Motion for Leave to Amend its FAC is inexcusable.

### 3. New Issues

Defendant argues that Plaintiff raises new issues in its motion for leave to amend. Defendant distinguishes the Plaintiff's FAC from the proposed SAC as follows:

Until the filing of its Motion for Leave to Amend and Cross–Motion for Summary Judgment, plaintiff's allegations throughout this matter have consistently remained that because *defendant SOA allegedly does not "maintain or cause to be maintained in the State of California sufficient service and repair facilities to* carry out the terms of the express warranties on its motor vehicles sold or leased to California consumers, it is . . . required by the Song–Beverly Consumer Warranty Act to compensate *retail sellers* who perform warranty repairs 'in

an amount equal to that which would be received by the retail seller for like service rendered to retail consumers who are not entitled to warranty protection' " [Emphasis added.] (Plaintiff's First Amended Complaint, ¶ 12, citing California Civil Code § 1793.5(b); see also plaintiff's First Amended Complaint ¶¶ 4, 21(d), 22, 28, and 35). However, by and through its recently filed Motions, *plaintiff is now attempting to allege that defendant SOA's warranty reimbursement rates "do not provide a reasonable profit."* (Affidavit of Richard Wilmshurst in Support of plaintiff's Opposition to SOA's Motion for Summary Judgment and Memorandum in Support of Plaintiff's Cross–Motion for Summary Judgment, ¶ 5.),

Def.'s Opp'n to Pl.'s Mot. for Leave to Am. First Am. Comp., Apr. 28, 2003, at 5.

Defendant argues that the § 1793.6 claim raises a "completely new issue." *Id.* According to Defendant, the issue of a providing a "reasonable profit" "is very different from plaintiff's original allegation that SOA fails to maintain sufficient service and repair facilities in California." Def.'s Procedural and Evidentiary Objections to Pl.'s Opp'n. Plaintiff rejoins that "[t]here is no new theory of liability the requirements of Song–Beverly have always been at issue in this case." Pl.'s Consol. Resp. to Def.'s First and Second Filings of Proc. and Eviden. Objections, May 5, 2003. Plaintiff argues that because the same events and the same statute are in question, there is no new theory of liability.

The proposed amendment contains a new theory of liability to the extent that it bases recovery on Plaintiff's status as an ISRF as opposed to Defendant's alleged failure to "maintain" or reimburse retail sellers. However, the standards for violating § 1793.5 and § 1793.6 are very similar. Both sections of the statute allow recovery for the performance of warranty service repairs and both sections base define recovery in terms of a "reasonable profit." Therefore, in weighing the factors militating against granting leave to amend and in favor of granting leave to amend, this factor is not persuasive for either side.

### 4. Discovery

Defendant argues that "plaintiff's new theories of liability and allegations warrant additional, extensive discovery if plaintiff is granted leave to amend." Def.'s Opp'n to Pl.'s Mot. for Leave to Am. First Am. Compl., at 5. Defendant contends that the new allegation

warrants significant expert and non-expert discovery and depositions, including extensive discovery, investigation, and review of plaintiff's financial statements, work orders, invoices, and reimbursement schedules regarding each and every part used in warranty service and repair, and investigation and expert discovery regarding industry standards relating to the issue of what is a reasonable profit in the industry.

Def's Proc. and Eviden. Objections to Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Mem. in Supp. of Pl.'s Cross Mot. for Summ. J., Apr. 28, 2003, at 3.

Defendant complains that it has already "expended significant resources in preparing and filing its extensive summary judgment motion addressing all of the claims in Plaintiff's First Amended Complaint." Def.'s Opp'n to Pl.'s Mot. for Leave to Am. FAC, at 6. Defendant argues that it should not be required to expend additional monies to conduct discovery on a new claim.

Plaintiff counters that Defendant has not yet engaged in any significant discovery at this phase of the litigation and therefore any additional discovery will not

prejudice the defense. According to Plaintiff, "defendant has not requested a *single* document, admission, or deposition from plaintiff." Pl.'s Reply to Def.'s Opp'n to Pl's Mot. for Leave to Am. FAC, at 3 (emphasis in original). Although Defendant has not *requested* any discovery, Defendant has in fact *replied* to Plaintiff's discovery requests by supplying approximately 2,500 pages of documents. Defendant has engaged in discovery at this stage of the litigation and would likely need to engage in significant further discovery if Plaintiff's motion for leave to amend were granted. The need for additional discovery following the grant of summary judgment in favor of Defendant weighs against allowing Plaintiff to amend the FAC.

### 5. *Frivolous New Claim*

■ Leave to amend is not appropriate where the amendment, if granted, would not provide relief. Plaintiff argues that its proposed amendments "provide a colorable claim for relief, making leave to amend appropriate" Pl.'s Mem. in Supp. of Mot. for Leave to Am. FAC, at 6.

Song–Beverly § 1793.6 provides a potential basis for recovery. Section 1793.6 provides:

> Except as otherwise provided in the terms of a warranty service contract, as specified in subdivision (a) of Section 1793.2, entered into between a manufacturer and an independent service and repair facility, every manufacturer making express warranties whose consumer goods are sold in this state shall be liable as prescribed in this section to every independent serviceman who performs services or incurs obligations in giving effect to the express warranties that accompany such manufacturer's consumer goods whether the independent serviceman is acting as an authorized service and repair facility designat-
> ed by the manufacturer pursuant to paragraph (1) of subdivision (a) of Section 1793.2 or is acting as an independent serviceman pursuant to subdivisions (c) and (d) of Section 1793.3. The amount of such liability shall be an amount equal to the actual and reasonable costs of the service and repair, including any cost for parts and any reasonable cost of transporting the goods or parts, plus a reasonable profit. It shall be a rebuttable presumption affecting the burden of producing evidence that the reasonable cost of service or repair is an amount equal to that which is charged by the independent serviceman for like services or repairs rendered to service or repair customers who are not entitled to warranty protection.

Plaintiff's theory of liability is plausible. Plaintiff could recover if Plaintiff has not entered into a warranty service contract with Defendant pursuant to Section 1793.2(a)(1)(B). The parties have not addressed the application of Section 1793.2(a)(1)(B), which allows manufacturers to negotiate good faith discounts reasonably related to reduced credit and general overhead cost factors arising from the manufacturer's payment of warranty charges direct to the independent service and repair facility, because that issue was not relevant to the outcome of the claims in Plaintiff's first two complaints.

To prevail on a Section 1793.6 claim, Plaintiff must prove that no contract including a good faith discount exists, and Defendant must be unable to prove that the rates that it pays for parts is reasonable. The court will not speculate as to which party would be successful on the merits of a Section 1793.6 claim. Instead, the court concludes that Plaintiff's proposed amendment is not frivolous on its face and, therefore, this factor supports Plaintiff's request for leave to amend.

### Balancing

The following factors weigh against granting Plaintiff's motion for leave to amend; Plaintiff's dilatory behavior, Plaintiff's use of the motion to avoid summary judgment, and the prejudice to Defendant resulting from the need for further discovery. These factors suggest that Plaintiff's proposed amendment is a last-minute attempt to take a second bite at a vanishing apple. The only factor weighing in favor of amendment is the fact that Plaintiff does not allege a frivolous claim. On balance, however, the court finds that the arguments against permitting amendment outweigh the arguments in favor of permitting the amendment at this late date. Consequently, Plaintiff's motion for leave to amend is denied.

### VI. Request for Judicial Notice

After the instant cross-motions for summary judgment were submitted to the court, Plaintiff requested the court take judicial notice of the legislative history of the Song–Beverly Act. *See* Doc. 125, dated 02/20/2004. Defendant responded with an *ex parte* request to disregard the legislative history submitted by Plaintiff. *See* Doc. 128, dated 02/27/2004.

Here, however, no resort to the statute's legislative history is necessary. The Court has decided the merits of this motion based on an interpretation of Song–Beverly's plain language. Consequently, Plaintiff's request for judicial notice is denied and Defendant's request is granted.

Accordingly, IT IS ORDERED that Plaintiff's request for judicial notice is denied.

FURTHER ORDERED that Plaintiff's motion for leave to amend is denied.

FURTHER ORDERED that Defendant's motion for summary adjudication of Plaintiff's Song–Beverly claims is granted.

FURTHER ORDERED that Plaintiff's motion for summary judgment of all claims is denied.